1  DOUG KISAKA
2  10061 Riverside Dr. #711
   Toluca Lake, CA 91602
3
4
5      **UNITED STATES DISTRICT COURT**
       **CENTRAL DISTRICT OF CALIFORNIA**
6
7
8  PLAINTIFF(S) NAMES              ) CASE~~2:10-CV-09827-UA~~
   Doug Kisaka a California Resident in Pro Se) **CV11-1942** MMM (MAN)
9                    V
10 DEFENDANT(S) NAMES              ) ~~AMENDED~~ COMPLAINT FOR
11 University of Southern California ) DAMAGES,
                                    ) INJUNCTIVE RELIEF AND
12 (USC), Officer J. Young, ID # No ) DECLARATORY RELIEF
13 56826, as an individual and Public )
                                    ) DEMAND FOR JURY TRIAL
14 Safety Officer of USC,  Officer C. )
15 Jimenez, ID#472570, as an individual )
16 and Public Safety Officer of USC, )
17 Officer Josh Voyda as an individual and )
18 Public Safety Officer of USC. Carey )
19 Drayton as an individual and Chief of )
20 Public Safety Officer of USC, Carol )
21 Sukow as an individual and as a senior )
22 employee in Student Affairs at the USC )
23 Viterbi School of Engineering, DOES 7 )
24 through 10.                      )

25
26 *"Those who lie, evade and fail to tell the whole truth obviously enjoy an*
27 *advantage over honest litigants.  Chemtall Inc. V Citi-Chem, Inc., 992F.  Supp.*
   *1390(1998)."*
28
   **AMENDED COMPLAINT AND DEMAND FOR INJUNCTIVE RELIEF**

                        Page 1 of 36

1

2    1.  Plaintiff Doug Kisaka an alumnus and student of the University of

3        Southern California sues defendant, University of Southern California and

4        several of its employees. And alleges the following:

5

6

7                        **NATURE OF THE ACTION**

8

9    2.  This is an action seeking declaratory, injunctive and monetary relief

10       against the University of Southern California ("USC") and its

11       employees for engaging in and condoning racial discrimination, racial

12       profiling, conspiracy to arrest without probable cause, issuing a stay

13       away order under false pretenses, false arrest, false imprisonment,

14       making a false police report, falsification of a police and university

15       report.

16   3.  By this Complaint, Plaintiff seeks injunctive Relief from the

17       discriminatory practices of the University including a wrongful stay away

18       order and judicial redress for violations of his civil and constitutional

19       rights due to racial discrimination and racial profiling.

20   4.  The Petitioner's claim is brought pursuant to the Fourth, Fifth and

21       Fourteenth amendments of the United States Constitution; Title VI of the

22       Civil Rights Act of 1964 and its implementing regulations, 42 U.S.C. §§

23       1981[i], 1982[ii], and 1986[iii]; Article 1, §§7(a)[iv] and 13[v] of the California

24       Constitution; California Civil Code § 52.1[vi]; California Government Code

25       §§ 11135[vii] and 11139, and California common law.  USC also receives

26       Federal Funding and is therefore bound by Title VI 42 U.S.C. §2000d[viii],

27       Title VI and its implementing regulations including 28 C.F. R. §§ 42.101

28       et seq.

5.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and §1343(a)(3).  Venue lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §84(a) and 23.8 U.S.C § 139(b)(2).

## II. THE PARTIES

6.  Plaintiff Doug Kisaka was, at all relevant times herein mentioned a student at the University of Southern California and a resident of the County of Los Angeles California.  Mr. Doug Kisaka is a United States Citizen of African descent and, by physical appearance a person of color.

7.  Defendant University of Southern California (USC) is a private research university located in Los Angeles, California which accepts substantial amounts of State and Federal, contracts, grants and other funding.

8.  Defendant Officer J. Young, ID # No 56826 is, and all times herein relevant was, an employee of USC and worked as a USC Public Safety (DPS) Officer. Detective Josh Voyda is, and all times herein relevant was, an employee of USC and worked as a USC Public Safety Officer.

9.  Defendant Officer C. Jimenez, ID # No 472570 is, and all times herein relevant was, an employee of USC and worked as a USC Public Safety (DPS) Officer. Detective Josh Voyda is, and all times herein relevant was, an employee of USC and worked as a USC Public Safety Officer.

10.  Carey Drayton is, and all times herein relevant was, an employee of USC and worked as Chief of USC's Public Safety Department (DPS).

11.  Carol Sukow is, and all times herein relevant was, an employee of USC and worked as Senior Employee in the Student Affairs Department of the USC Viterbi School of Engineering,

2:10-CV-09827-UA     AMENDED COMPLAINT     DOUG KISAKA v UNIVERSITY OF SOUTHERN CALIFORNIA

12. Plaintiff is informed and believes and thereon alleges that each of the Defendants designated as a DOE is intentionally responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged. The true names and capacities of DOES 7 through 15 inclusive, and each of them, are not now known to Plaintiff who therefore sues said Defendants by such fictitious names and will be added to this action as provided by California Code of Civil Procedure Section 484.

13. Defendants, and each of them, did the acts and omissions hereinafter alleged in bad faith with knowledge that their conduct violated well established and settled law.

## III. BACKGROUND OF PLAINTIFF

14. The Plaintiff Doug Kisaka graduated summa cum-laude with a Bachelors Degree in Telecommunications from Oral Roberts University. He later received a Masters Degree in Fine Arts in Film/Television Production from University of Southern California ("USC") School of Cinematic Arts. He subsequently worked for lead systems integration companies as a video and broadcast systems integrator. In 1997, he launched his own company, Digital Broadcast, Inc hiring roughly 30 employees over 5 years. After the 9-11 disaster in 2001 he switched to a focus on government work. In June 2002, he was certified as an SBA 8(a) Federal Government and Department of Defense Contractor. In 2006 after downsizing the company he rejoined USC to complete a Masters Degree in Electrical Engineering with a focus on Creative Technologies.

15. But he ran into a pattern of civil rights violations by USC's Department of Public Safety targeting African American students - approaching,

stopping and questioning, and sometimes arresting students of African American decent while giving other students a free pass or a pat on the wrist often not subjecting them to the same treatment or tactics. For example cases involving wealthy fraternity students or sports athletes, who should have been arrested were instead disposed of as judicial referrals.

16. The Plaintiff having completed most of his degree requirements looked forward to leaving the University, but unexpectedly found himself the unwitting and hapless target of these discriminatory practices, threatening to upend his graduate degree program and imperil his career.

## IV. FACTS GIVING RISE TO THIS ACTION

17. On Friday March 26th 2010 Plaintiff was invited by the USC Viterbi School of Engineering's DEN Program to participate as an unpaid volunteer recruiter in a recruitment exercise for prospective engineering students. Plaintiff left feeling he had accomplished his goal to persuade some of these students to enroll.

On the way off the campus, he was approached by several white DPS SUV's and arrested for trespassing. Plaintiff was accosted, roughed up and manhandled by 8 to 10 officers. A white female officer heckled Plaintiff with non sequitur questions loaded with preposterous innuendo sans any reading of Miranda Rights. In one instance, proverbially pulling a rabbit out of a hat she asked, "Have you ever been arrested for lewd conduct?" Puzzled because he never had, the Plaintiff denied the suggestion and from thereon chose to remain silent without his attorneys present. To which she responded, "If you don't want to answer my

questions, then you must be guilty." The female officer appeared to grasp at straws to get Plaintiff to answer to anything they could use to justify the arrest. The Plaintiff declined to answer any further questions.

18. The security officers shoved Plaintiff against an SUV forcing his hands up and legs astride, as they searched him for weapons or other paraphernalia and as they continued their barrage of unfounded questions. They claimed they had sent a certified letter to his address banning him from the campus, which the Plaintiff had not seen. In their possession, they had a picture of Plaintiff taken from an encounter in the USC Salvatori Computer lab and another which they had obtained from the Plaintiff's Facebook page.

19. The tirade of questions continued by Defendant Officer J Young and his partner Officer C. Jimenez as they stuffed the Plaintiff into the cramped rear seat of a Security SUV and drove him to the Southwest Police Station at 1540 Martin Luther King Blvd. He was booked and transferred to the main Police station at 77th and Broadway where he was jailed for 2 days till Sunday March 28th 2010.

20. During the booking, Defendant Officer Young suggested the reason they spotted Plaintiff was because of his attire. He claimed Plaintiff didn't look like he belonged at USC with his bright red shirt and "dirty blue jeans and tennis shoes."

21. He quipped that USC students would never dress like Plaintiff. Plaintiff begged to differ describing his involvement in the just concluded recruiting event as successful, where his attire didn't seem to bother any prospective students. Plaintiff added," If everyone were as worried about attire as he was, then Mahatma Gandhi never would have become the father of the Nation of India."

22. Plaintiff was booked and charged with a Los Angeles Municipal Code (LAMC) 42.14b violation of trespassing.  When Los Angeles Police Department ("LADP") booking Officer Deleon, asked why the USC Officers insisted on finger printing the Plaintiff for such a minor violation, Defendant Officer J Young and his partner claimed they were doing it in case the trespassing recurred.

23. On his way out of jail on Sunday March 28th, an unknown LADP jail officer at the 77th and Broadway Division said he thought the arrest was unfounded   A supervising LAPD officer, (officer Rivers) at the Southwest Division where Plaintiff picked up belongings, suggested the Plaintiff contact the Southern Christian Leadership Center (SCLC) a prominent civil rights organization.

24. During the booking for trespassing, unlike the Plaintiff's California ID and a credit card which were taken from the Plaintiff, the USC campus police withheld the plaintiff's USC ID from the LAPD.  That USC ID is not included among a list of cards or ID's on the LAPD prisoner's receipt.  The USC ID was also never been returned.   The USC campus police confiscated and concealed the ID from the LAPD to mislead and bolster their false charge of trespassing.

25. All of this came about after a fateful incident in February 2010.  On the morning of February22nd, Plaintiff received an email from USC's Office of Degree Progress confirming Plaintiff's status as a graduate engineering student through the fall 2010.  Traditionally there has been a disproportionately small number of African American students at the engineering school making the odds of being singled out for African Americans much higher.  In the USC Salvatori Computer lab it typically took the form of a computer lab worker sidling up to a desk next to

2:10-CV-09827-UA    AMENDED COMPLAINT    DOUG KISAKA v UNIVERSITY OF SOUTHERN CALIFORNIA

someone pretending to clean or set things in order while carefully observing their activities on the computer.

26. That evening Plaintiff was at the USC Salvatori Computer Lab where there were many students wandering in and out without displaying identity cards (ID's are not required before 8pm), Plaintiff arrived before 8pm. But sometime after 8pm, an oriental student worker came over to his station and asked for an ID. Plaintiff did not have his ID and commented he believed he was being singled out, because he was black. Plaintiff was the only African American in the lab and no other students at their desks were being asked for IDs.

Plaintiff turned his computer screen to the lab worker to display what he was working on. He hoped the fact that he was logged onto a secure USC network would assure the lab worker that he was a current student with authorization to be in the lab.

27. The student worker returned to his desk but about 20 minutes later, two DPS officers - an oriental (likely Defendant Officer Josh Voyda) and Hispanic arrived. Plaintiff was forced to sign off and subjected to harsh questioning, including a request for a school ID number. The oriental officer made disparaging remarks about the Plaintiff's appearance. He suggested the Plaintiff needed to work on his hair style (cut his hair short) and change his attire, otherwise he would stand out. The Plaintiff was dressed much like many other USC students, but he just happened to be the only person of color present that night. There are scruffy, unkempt, shabby white or Asian students everywhere on USC's campus who are never singled out for the way they are dressed.

28. The Plaintiff returned to the Computer Lab the following day at around 6pm.

There he ran into an African American Computer lab worker named Bert who confidentially disclosed he had overheard DPS officers leaking a plan to arrest the Plaintiff if he were ever on campus.  He also suggested the Plaintiff leave the campus immediately.

29. Plaintiff left the campus and later telephoned the USC Career and Protective Services Department, which oversees DPS, to seek clarification and voice a complaint. The Plaintiff talked to an employee named "Yula" (short for Yolanda), assistant to the Vice President, describing how horrified he was to be targeted for arrest having done nothing wrong, except show up at a computer lab without a USC ID.  She claimed not to be aware of anything.  Another call directly to the DPS watch Commander that evening yielded the same answer.

30. Early the following morning, on February 24th, the Plaintiff seeking to preclude any plans for his arrest, attempted to file a preemptive complaint at the DPS campus office – what he believed would be a simple process of filling out a form with an attending officer.  Overhearing his name as he requested a form from a male officer, a female attendant asked the Plaintiff to wait white she disappeared into a back office for over 10 minutes.  She eventually emerged and told the Plaintiff he would have to see the watch commander. As he waited, it became evident to the Plaintiff, they had no intentions of permitting him to file a written complaint and he left.

31. A month later, on Friday March 26th, 2010 the Plaintiff was arrested, booked and jailed for 2 days for trespassing and told never to set foot on the university campus ever again without their permission.

32. But the Department of Pubic Safety had gone even further.  Plaintiff later found out that DPS had issued a stay away order approximately 10 days after they inadvertently leaked their secret plan to arrest Plaintiff.   And

along with the stay away order they had circulated a Facebook head shot and another unflattering head shot taken at the computer lab to USC's engineering staff and faculty.  It is believed Defendant Carol Sukow, who manages Student Affairs in the Masters Program at the Engineering School, is partly culpable for the stay away order.  But she also disingenuously and intentionally construed the stay away order to an outright ban of communication with the Plaintiff.

33. The March 26th 2010 LAPD arrest file 100309707 reveals that Defendant Carol Sukow saw the Plaintiff at the recruiting function and called the campus police.  But Defendant Carol Sukow acted in bad faith and gross negligence when she made the police report under false pretenses after her department had knowingly recruited the Plaintiff to work as an unpaid volunteer recruiter, issued two invitations, and received Plaintiff's RSVP's, including an RSVP by email a day prior to the event on March 26th 2010, the stay away order notwithstanding.

34. This was not the first time Defendant Carol Sukow had been a stumbling block to the Plaintiff.  She was also responsible for over-zealously pulling the Plaintiff's tuition scholarship (based on an arbitrary grade cut-off point) after the plaintiff had enrolled in fall 2008, and missed the deadline to withdraw.  This left the Plaintiff with a balance due for the first time.  The Plaintiff approached USC'S Dean of Engineering to resolve this on September 22nd, 2008 but never heard back.  The Plaintiff has reason to believe Ms. Sukow and her Department interfered with that too.  Prior to this, the Plaintiff had an impeccable financial history with the University.

35. At Defendant Sukow's directive, Plaintiff is now unable to conduct any correspondence by phone, email or otherwise with the Masters Programs Department at the engineering school.  And to the extent this occurs, the DPS non-sworn officers, Ms. Sukow and here Department were violating

the rights of Plaintiff under U.S. 42, 1981.  As a result of the stay away order and communication restrictions imposed by Defendant Sukow and her department, the Plaintiff has not been able to enroll, even as an off campus student, has lost and stands to lose an indefinite number of months or years, including skill sets, which will negatively impact his livelihood and career.  The communication black-out imposed by Defendant Sukow also precludes Plaintiff from finding out what transferable courses might be taken at an alternate university campus - for the same program.  The combination of the discriminatory stay away order and Ms. Sukow's restrictions ultimately imperiled Plaintiff's future and left him in indefinite limbo, constituting a continuing intentional tort in violation of under U.S. 42, 1981.  USC altered Plaintiff's standing to out-of-status graduate student during a Department of Education investigation of civil riots violations by USC including the false arrest and imprisonment of Plaintiff.  In April, 2010 a few weeks after the false arrest, the Department of Education approved approximately $20,000 in additional aid for Plaintiff which could not have been possible if Plaintiff were a graduate student out-of-status.  In August 2010, the Plaintiff applied for additional financial aid, but was required before processing by the Department of Education to have his student status reinstated.  A USC Engineering School Student Advisor, Ms Fontenot agreed to do so, but ran into an unknown road block.  She advised Plaintiff, "Upon looking into your request I found that you are currently out of graduate student status. Additionally, you have a collections hold on your account."  It is believed that the change to graduate student out-of-status conveniently occurred while the Dept of Education was investigating the University about civil rights violations against the Plaintiff - where the university's main defense of its actions was that "the Plaintiff was a non-student at the

Page 11 of 36

time of the false arrest and false imprisonment which therefore meant the Department of Education lacked jurisdiction." The university boxed itself into a corner and has refused to change this status as long as it has to stave off any potential legal proceedings or further investigations where their best defense is "the lack of jurisdiction by any investigatory authority or court. But the $20,000 financial aid award by the Department of Education in April 2010 after the false arrest and emails from faculty and staff including the Office of Degree Completion exposes this legal strategy as foul play to stave off any investigation by the Department of Education a continuing tort in violation of 42 U.S.C. § 2000d, which indefinitely prevents the Plaintiff from enrolling as long as there is the potential for investigations or legal challenges against USC, the untold damage to the Plaintiff's career notwithstanding. The university may also be criminally liable of obstructing justice and lying to Federal investigators a violation of 18 U.S.C. § 371 and other Federal statutes.

36. On April 22nd 2010, the Central Arraignment Court of Los Angeles threw out the trespass charges at the request of the prosecutor. On May 17th, 2010, the Los Angeles Superior Court located at the Clara Shortridge Foltz Criminal Justice Center found that the campus police made a false arrest and imprisonment and thereby declared the Plaintiff "factually innocent" ordering the arrest record sealed and destroyed.

## MOST RECENT INCIDENTS OF RACIAL PROFILING
(All the following incidents took place in areas immediately surrounding the USC campus in the 90007 zip code)

37. The Petitioner was at various times since 2008 stopped or questioned, without probable cause, by campus police since 2008. After the false

arrest and imprisonment it increased to such as extent that Plaintiff had to report the matter to Officer Hawkins of the LAPD South Western Division on June 12th, 2010.

38. On May 24th 2010 at 7:40pm, two DPS officers, including Defendant Officer J Young in a USC security police white SUV drove east on 30th street towards Vermont Blvd.  They stopped at the corner and appeared to surreptitiously observe Plaintiff a block south at Vermont and Jefferson where he stood waiting for a bus.  The officers turned right onto Vermont heading south towards the bus stop and drove past staring directly at Plaintiff  They then turned the corner at the bus stop, heading west on Jefferson Blvd.   They traveled only one block as Plaintiff expected and made an unusual U turn on this very busy street, heading back towards the same corner.  They traded glances with Plaintiff and took off in the opposite direction.

39. On May 30th 2010 at approximately 2am, 4 DPS security white SUV's drove slowly past Plaintiff's place of residence as he went to close his bedroom window.  They did not appear to be going anywhere in particular and there were no reports of any crime in the area that evening.

40. On May 31st 2010 at approximately 6:00pm, Plaintiff was standing at the corner of Catalina and 37th Place.  A DPS white SUV with two Hispanic campus police officers drove very slowly south on Catalina up to the same corner, then turned left, observing Plaintiff intently as they did, and continued past Plaintiff's place of residence on the 1100 block of 37th place

41. On June 9th 2010 at 7:30pm Plaintiff was on his way back home from a Smart and Final Store at 36th Place and Vermont.  As he walked south on Vermont towards 37th Place, he noticed a DPS White SUV making a very quick, almost surreptitious, turn onto his home street - 37th place heading

West towards the 1100 block.  He figured they might be following him, so he took a detour onto a sidewalk leading to a cul-de-sac at 37th St, one block north of 37th Place.  A few moments later, the SUV showed up on this alternate dead end street.  They reached the end of the cul-de-sac, took a U turn and drove back trading glances with Plaintiff.  The two DPS officers in the SUV (the driver appearing to be white or Hispanic with a shaved head and dark sunglasses, and the other also white or Hispanic) then turned right at Catalina St. and headed north.  They also did not patrol any other side streets as they drove off into the distance.

42. On June 15th 2010 at 7:25pm, Plaintiff took a walk towards the Smart and Final Store at 36th and Vermont.  Ten minutes later he headed back south on Catalina Blvd to 37th place, then turned left on 37th place heading to the 1100 block.  He entered his place of residence.  About 2 minutes later, he spotted a DPS white SUV heading south on Catalina following his exact path, trailing close behind him.

43. June 18th 2010 at 4:21pm.  A White security SUV headed west was parked right outside Plaintiff's place of residence on the north side of the street in the 1100 block of west 37th place near Catalina St.  At 5:30pm Plaintiff observed them attempting to stop a Hispanic man traveling on the wrong side of the road on his bike.  The man defied them and continued east along the street.  The DPS officers sat there and did nothing.  The DPS white SUV finally left at 5:50pm.

44. On September 29th 2010 at approximately 9pm at night as Plaintiff walked east along the W. 1100 block of 37th place to the intersection of 37th place and Vermont St to catch a bus, he was followed closely by a USC campus police white SUV with its lights off.  He crossed Vermont St. and reached the well lit bus stop across the street, where he was the only person present.  The SUV stopped at the intersection directly facing

Page 14 of 36

the Plaintiff across the street. Without turning its lights on, the campus police officer(s) buzzed Plaintiff with a loud low frequency siren noise. A bus arrived and Plaintiff left. The Plaintiff reported the incident and various others to LAPD Senior Lead Officer Garner on October 6th 2010. On or around Friday November 26th 2010 at around 8:30pm, Plaintiff was accosted by two USC campus police white SUV's. Plaintiff was heading east along the W. 1100 block of 37th place on the way to Vermont St.  Plaintiff complied as they stopped him and ordered him to put hands over his head and spread his legs. Plaintiff was then handcuffed.  The officers who included three white males and a black male officer named Clayton demanded an ID, of which the Plaintiff had none.  Plaintiff gave them his name and the address listed on his California ID.  They also seized two bank cards.  The officers demanded Plaintiff's residential address at least 4 times.  Fearing for his safety, Plaintiff refused.  Plaintiff told officers that Supreme Court only required him to give a sworn officer his full name.  Plaintiff also invoked his 4th amendment right to privacy regarding his place of residence. Confusing Miranda Rights with the 4rh amendment, the officers claimed that since Plaintiff was technically not under arrest, but being held, he had no business invoking the 4th amendment.  And therefore had no reason not to inform them where he lived.  The USC Officers threatened to take Plaintiff down to a police station to be booked if Plaintiff did not divulge where he lived.  Plaintiff agreed to be taken to the police station.  The Plaintiff also suggested they contact the several officers at that station to explain their actions including LAPD Senior Lead Officer Garner (community relations). One of the Officers remarked that Officer Garner was busy roasting a turkey for thanksgiving and couldn't be bothered.  Plaintiff then suggested they contact LAPD Police Station Captain Zipperman.  Within less than 2 minutes the officers released Plaintiff, the Plaintiff reported the incident to LAPD Senior Lead Officer Garner on December 2nd 2010.   The campus police officers'

Page 15 of 36

threats to coerce the Plaintiff to divulge his residential address, without reasonable cause are also a violation of the Plaintiff's Fourth amendment rights, and Cal Article 1, § 13 which asserts the right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches.

## PREVIOUS INCIDENTS OF RACIAL PROFILING

45. In 2007 when Plaintiff moved from the Toluca Lake area to the outskirts of USC. Plaintiff took a walk once a day or more with 1 to 4 dogs or by himself on and off campus. Occasionally Plaintiff would report witnessing incidences of vandalism or assault to DPS. These crime incidences usually occurred on the frat rows (27th and 28th St.) or along 29th or 30th St. DPS seemed to respond fairly quickly with LAPD in tow. But they usually let off these mostly wealthy fraternity students with nothing more than a pat on the wrist. But there were occasions that became a cause for concern. And those times usually found Plaintiff walking alone. Plaintiff would from time to time be tracked or trailed from a distance and even stalked by DPS officers in their white SUV's. Sometimes they would drive up and stare the Plaintiff down menacingly as he walked down a street or alley. Plaintiff never observed them doing this to white or Asian students.

46. In one incident in 2008, the Plaintiff walked up to two Hispanic officers trailing him in a white SUV, to remind them that he was a USC grad student. He pleaded with them to leave him alone. The officers made a several snide remarks quipping they could do whatever the hell they wanted. They continued trailing Plaintiff as he walked on, and then eventually drove off.

47. In a separate incident in 2008 during the early morning, the Plaintiff took an early morning walk which took him past the back alley of an apartment complex on 30th St. near Vermont St. The Plaintiff stopped to take a rest. A Hispanic handyman emerged out of the apartment complex and asked Plaintiff to leave because he claimed the manager feared that the Plaintiff might make female students uncomfortable. Plaintiff refused pointing to the fact that the he was in a public area and not on their property. The Korean manager of this building then called DPS. A few minutes later a DPS officer showed up in a white SUV. The DPS officer insisted that the Plaintiff leave because the Plaintiff was making them uncomfortable. The Plaintiff again reminded him that he was a USC grad engineering student and had just as much right to be in this public area as any other student or citizen. The DPS officer became belligerent and the Plaintiff acquiesced under threat.

48. During the first week of October 2008 Plaintiff took a walk along the frat row on 28th St. - lined with opulent turn of the century antebellum mansions. A male and female Hispanic officer in a white SUV stopped the Plaintiff to ask him what he was doing there. The Plaintiff informed them he was a USC grad student taking a walk. They eventually drove on. The officers were not observed stopping any other mostly white students.

49. The tracking or stalking continued through the end of 2008 with at least one incident every 2 to 4 weeks.

CHURCH INCIDENT – MARCH 2008

50. On or around March 5th 2009, the Plaintiff was given permission by the pastor of the United University Church on the USC campus to stay there

Page 17 of 36

overnight.  The Plaintiff entered the building late one night on Thursday March 6th 2008.  Five minutes later, as he was relaxing on a couch in the lobby, at least 5 DPS officers burst through the front doors demanding to know what he was doing there, ordering him to show his ID.  Startled he gave them his USC ID and divulged the permission he had received from pastor (Frank) to be there overnight.  Seated at a computer on a little front desk was a white sophomore student named Alex from Romania who spoke halting English.  Without requesting his ID, they asked Alex if Plaintiff was allowed to be in the church to which Alex responded in the affirmative.  The officers then left.

51. Infuriated that a white sophomore foreign student who could barely speak English would be given the presumption of the right to take up in this USC church office over a black graduate student with a USC Masters Degree, the Plaintiff marched down to the DPS main office and complained about what appeared to be a case of blatant racial profiling. The officers at the front desk stood in stark silence and offered no response.  Plaintiff telephoned the Defendant DPS Chief Carey Drayton the following day.  The Plaintiff later received a follow up call and formal apology from the chief through one of his lieutenants.


## THE PLAINTIFF HAS NO ADEQUATE REMEDY AT LAW

52. The Plaintiff has no adequate remedy at law.

53. Unless restrained by this Court from their discriminatory practices towards Plaintiff and unless the wrongfully issued stay away order is rescinded, the Plaintiff's rights and the civil and constitutional rights of

other African American students will continue to be violated and bring about irreparable harm.

## V. REQUISITES FOR RELIEF

54. As a direct and proximate result of the conduct of the defendants described above, plaintiff has been denied his constitutional and statutory rights as stated below and has suffered and continue to suffer mental and emotional distress, humiliation, embarrassment, discomfort, anxiety and pain.

55. Defendants' acts were willful, wanton, malicious, oppressive and done with conscious disregard and deliberate indifference for Plaintiff's rights. Therefore, defendants' actions justify an award to plaintiff of punitive damages in an amount to be determined at trial.

56. Defendants' policies, practices, conduct and acts alleged herein have resulted and will continue to result in irreparable injury to plaintiff, including but not limited to further violations of his statutory and constitutional rights. Plaintiff has no plain, adequate or complete remedy at law to address the wrongs described herein. Plaintiff therefore seeks injunctive relief restraining defendants from continuing to engage in and enforce the unconstitutional and illegal policies and practices, conduct and acts described herein.

57. Defendants acted with discriminatory intent in violation of plaintiff's legal and constitutional rights, and have directly and proximately caused plaintiff's humiliation, mental pain and suffering. As a direct, legal and proximate result of defendants' violations of plaintiff's statutory, constitutional and common law rights, plaintiff has been damaged in an

Page 19 of 36

amount which is not yet known.  Plaintiff will seek leave of Court to amend this Complaint when ascertained, or will amend to conform to proof at time of trial.

58. At all times herein mentioned, defendants had an obligation to comply with federal and state laws regarding racial discrimination.  Defendants failed to meet these obligations with respect to Plaintiff.

## VI. FIRST CAUSE OF ACTION

Race Discrimination in Federally Funded Programs
Violation of Title VI of the Civil Rights Act of 1964 and 28 C.F.R. §§ 42.101 et seq. 42 U.S.C. § 1981
(Against Defendants USC, Young, Voyda, Drayton, Sukow)

59. Paragraphs 1 through 58 of this complaint are incorporated by reference as if set forth in full.

60. Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, provides:

[N]o person in the United States shall, on the ground of race, color, or national origin, be excluded form participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

61. Federal regulations implement Title VI prohibit federally funded programs or activities from having a racially discriminatory impact or effect.  The regulations provide that no program receiving federal financial assistance shall:

Utilize criteria or methods of administration which have the effect of subjecting individuals to discrimination because of their race, color, or

national origin, or have the effect of defeating or substantially impairing accomplishment of the objectives of the program as respects individuals of a particular race, color, or national origin.

62. According to public information, in fiscal year 2007 USC expended $415.2 million on research, and major funding came from federal agencies: the Department of Health and Human Services granted $182.4 million, Department of Defense $45.7 million, and National Science Foundation $41.8 million. Total foundation and association sponsorship totaled $43.1 million, corporate research $30.6 million, and local government funding totaled $28.1 million. The university received $463.7 million in sponsored research from 2008 to 2009.

63. However only 4.2% and 5.8% of students are black in graduate and professional programs and undergraduate programs respectively. Far less than the number of international students at 24.7 and 9.1% respectively, Asian students at 20.2% and 21.2% respectively, or Caucasian students at 31.9% and 47% respectively. This is even far more disproportionate in the USC's Engineering School where one is hard pressed to find any black students at all.

64. According to the website of USC's office of Equity and Diversity the University abides by Title IX which refers to federal regulations which provide that no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity (with certain exceptions) receiving federal financial assistance. It also states that it complies with federal regulations maintaining diversity and nondiscriminatory policies, and thus is bound to abide by the terms of Title VI and its implementing regulations, including 28 C.F.R. §§ 42.101 et seq.

Page 21 of 36

65. The policy employed by USC to approach , stop and question, and sometimes arrest students of African American decent have a discriminatory impact on people of color including Plaintiff, as described herein, and thereby violate 28 C.F.R. §§ 42.101 et seq and Title VI. This violation is actionable under 42 U.S.C. § 1981. Through their acts and omissions as alleged this Complaint, defendants have caused the violations of plaintiff's rights secured by Title VI and its implementing regulations.

66. Defendants' violation of Title VI and its implementing regulations has caused and will continue to cause plaintiff to suffer tremendous harm and public humiliation in that he has been and will continue to be subjected to defendants' practice of race-based discrimination in the absence of judicial intervention.

## VII. SECOND CAUSE OF ACTION

Intentional Race Discrimination in Federally Funded Programs
Violation of Title VI of the 1964 Civil Rights Act
(Against Defendants USC and Sukow)

67. Plaintiff incorporates by reference and realleges paragraphs 1-67 of this Complaint.

68. Defendants' intentionally discriminate against plaintiff, through a discriminatory policy of profiling African Americans, as described herein, in violation of § 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq.

69. Defendants' violation of Title VI has cause and will continue to cause plaintiff to suffer tremendous harm and public humiliation in that they

have been and will continue to be subjected to defendants' practice of race-based discrimination in the absence of judicial intervention.

## VIII. THIRD CAUSE OF ACTION

Violation of the Fourteenth Amendment and 42 U.S.C. § 1981
(Against all defendants in their individual and official capacities)

70. Plaintiff incorporates by reference and realleges paragraphs 1-70 of this Complaint.

71. Defendants, acting under color of law and in concert with one another have engaged in a continuing pattern and practice of intentional race discrimination carried out on USC's campus. In so doing, defendants have caused plaintiff to suffer deprivation of education, his fundamental rights to liberty and to be free from unlawful searches, detentions, seizures on account of their race and/or national origin. These actions violated the plaintiff's right to equal protection of the laws, in violation of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1981.

72. Defendants acting under color of law, institute, authorize, tolerate, ratify permit and acquiesce in policies, practices and customs of detention, searches and seizures which involve intentional race discrimination in the provision of law enforcement services.

73. The defendants' acts were done in knowing violation of plaintiff's legal and constitutional rights, and have directly and proximately caused plaintiff's humiliation, mental pain and suffering.

# IX. FOURTH CAUSE OF ACTION

Violation of the Fourth and Fourteenth Amendments to the United States
Constitution
42 U.S.C. § 1981
(Against all defendants in their official and individual capacities)

74. Plaintiff incorporates by reference and realleges paragraphs 1-74 of this Complaint.

75. Defendants, acting under color of law and in concert with one another have violated plaintiff's rights to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.  Defendants have subjected plaintiff to false imprisonment, taunting interrogations, unwarranted  stops and searches without probable cause or reasonable suspicion., in violation of the Fourth Amendment guarantee against  unreasonable searches and seizures and giving rise to plaintiff's claims pursuant to the Fourteenth  Amendment and 42 U.S.C. § 1981.

76. Defendants, acting under color of law, institute, authorize, tolerate, ratify , permit and acquiesce in policies, practices and customs of detentions, interrogations, searches and seizures without probable cause or reasonable articulable suspicion of crime, in their provision of law enforcement services.

77. Defendants' acts were done in knowing violation of plaintiffs' legal and constitutional rights, without good faith, and have directly and proximately caused plaintiff's humiliation, mental pain and suffering.

2:10-CV-09827-UA    AMENDED COMPLAINT    DOUG KISAKA v UNIVERSITY OF SOUTHERN CALIFORNIA

## X. FIFTH CAUSE OF ACTION

Violation of 42 U.S.C. § 1981
(Against all defendants in their individual and official capacities)

78. Plaintiff incorporates by reference and realleges paragraphs 1-78 of this Complaint.

79. Defendants, acting under color of law and in concert with one another, have denied plaintiff his rights to full and equal benefit of the laws and their right to be subject to like punishment under 42 U.S.C. § 1981.

80. Defendants' acts were the result of discriminatory intent and were done in known violation of plaintiff's legal and constitutional rights in bad faith, and have directly and proximately caused plaintiff's humiliation, mental pain and suffering.

## XI. SIXTH CAUSE OF ACTION

Conspiracy to Violate Civil Rights
42 U.S.C. § 1986
(All defendants)

81. Plaintiff incorporates by reference and realleges paragraphs 1-81 of this Complaint.

82. Defendants acting under color of law and in concert with one another, and by way of a conspiracy among them, have caused plaintiff to be denied equal protection of the laws, on account of plaintiffs' race and/or national origin, by subjecting him to legally unjustified and racially discriminatory seizures, searches and detention.  The supervisory defendants had knowledge of the conspiracy to violate plaintiff's civil rights and of the

violations committed, and had the power to prevent these wrongs, but neglected or refused to so in violation of 42 U.S.C. § 1986.

83. Defendants' acts were done in knowing violation of plaintiff's legal and constitutional rights, and have directly and proximately caused plaintiff's humiliation, mental pain and suffering.

## XII. SEVENTH CAUSE OF ACTION

Violation of Government Code §§ 11135 and 11139
(Against USC)

84. Plaintiff incorporates by reference and realleges paragraphs 1-84 of this Complaint.

85. Government Code § 11135(a) prohibits race discrimination in any program or activity that is funded directly by the state or receives any financial assistance from the state.

86. State regulations implementing § 11135 provide that no program receiving financial assistance from the State of California shall have an unjustified discriminatory impact or effect on the basis of race.

87. Defendant USC receives financial assistance from the State of California and thus is bound to abide by the terms of Government Code § 11135 and its implementing regulations.

88. Defendants USC's violation of Government Code § 11135 and its implementing regulations have caused and will continue to cause plaintiffs to suffer tremendous harm and public humiliation in that they have been and will continue to be subjected to their practice of race-based discrimination without judicial intervention.

# XIII EIGHTH CAUSE OF ACTION

Violation of Article 1, § 7(a) of the California Constitution
(Against all Defendants)

89. Plaintiff incorporates by reference and realleges paragraphs 1-89 of this Complaint.

90. Defendant's above-described conduct violated plaintiff's rights not to be deprived of due process and equal protection of the laws under Article 1, § 7(a) of the California Constitution.

# XIV NINTH CAUSE OF ACTION

Violation of Article 1, § 13 of the California Constitution
(Against all Defendants)

91. Plaintiff incorporates by reference and realleges paragraphs 1-91 of this Complaint.

92. Defendant's above-described conduct violated plaintiff's rights not to be free from unreasonable searches and seizures under Article 1, § 13 of the California Constitution.

# XV TENTH CAUSE OF ACTION

Violation of Civil Code § 52.1(b)
(Against all Defendants)

93. Plaintiff incorporates by reference and realleges paragraphs 1-93 of this Complaint.

94. Defendants' above-described conduct interfered and/or attempted to interfere with plaintiff's exercise and/or enjoyment of their rights as secured by the United States Constitution and/or enjoyment of their rights as secured by the United States Constitution and/or California Constitution, in violation of California Civil Code 52.1.

## XVI ELEVENTH CAUSE OF ACTION

Intentional Infliction of Emotional Distress
(Against all Defendants except USC)

95. Plaintiff incorporates by reference and realleges paragraphs 1-95 of this Complaint.

96. Defendants' above-described conduct was extreme and outrageous. Said conduct was done intentionally and with conscious disregard of plaintiffs rights and directly and proximately caused plaintiff's humiliation, mental pain and suffering.

## XVII TWELFTH CAUSE OF ACTION

Negligent Infliction of Emotional Distress
(Against all Defendants except USC)

97. Plaintiff incorporates by reference and realleges paragraphs 1-97 of this Complaint.

98. Defendants' above–described conduct constituted a breach of defendants' duty of care to plaintiff to ensure that defendants did not cause unnecessary or unjustified harm to plaintiff.  It was reasonably

foreseeable to all defendants that a breach of that duty by defendants would cause emotional distress to Plaintiff.

## XVIII THIRTEENTH CAUSE OF ACTION

Negligent Infliction of Emotional Distress
(Against all Defendants except USC)

99. Plaintiff incorporates by reference and realleges paragraphs 1-99 of this Complaint.

100.    Defendant's above described conduct restrained plaintiff against his will and without legal justification.

101.    Defendants' acts were intentional and done in violation of plaintiff's rights have directly and proximately caused plaintiffs humiliation, mental pain and suffering.

## XIV FOURTEENTH CAUSE OF ACTION

Negligent Employment/Supervision
EMPLOYEMENT /RETENTION/SUPERVISION
(Against USC, Drayton)

102.    Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 102 of this complaint, and by this reference incorporates the same herein and makes each a part thereof.

103.    On or about March 26th 2010 and for some time prior, Defendant USC, and Defendant Chief Drayton, in the exercise of due care, should have known that several DPS officers including Defendant's Young and Voyda and some of their cohorts (to be named) had a propensity,

2:10-CV-09827-UA    AMENDED COMPLAINT    DOUG KISAKA v UNIVERSITY OF SOUTHERN CALIFORNIA

character traits and practice, while purporting to act under color of law, for bigotry and / or excessive aggressiveness, and /or dishonesty and/or prevarication.

104.    At all times mentioned herein, Defendant USC and Drayton knew or in the exercise of due care should have known, that the afore described traits of character, practices and propensities of Defendants, and each of them, made them unfit to serve as DPS officers and/or security guards and were likely to cause harm to members of the public, including the plaintiff.

105.    The harsh treatment inflicted on a journalist John Zeigler by Defendant J Young and several other DPS officers on April 15th 2009 at USC's School of Journalism, and caught on camera, is a disturbing example of the violent tactics employed and sanctioned by DPS including the use of force to turn off media cameras.  Though accused of trespass of a ceremony honoring Katie Couric, John Zeigler, who happens to be white, was held for only a few minutes before being freed without charge.

106.    Unlike this journalist who was not invited and appeared to resist arrest due to the pain inflicted, the Plaintiff was fully cooperative when falsely arrested.  And unlike the journalist who was quickly freed, the Plaintiff was booked and subjected to false imprisonment for 2 days - a far harsher punishment.

107.    Defendants USC and Drayton, Notwithstanding such knowledge, negligently, carelessly and recklessly, hired, employed, retained and failed to properly supervise, train and control Officer Young and others to be named, and assigned these officers to duties which enabled each of them to violate the law including but not limited to making false arrests, fabricating probable cause, falsifying reports, maliciously punishing and

prosecuting innocent persons, using excessive force, and covering up repeated acts of misconduct.

108.     As a direct and proximate result of the foregoing, Plaintiff has been damaged as recited above and demands and is entitled to the damages including but not limited to, general and special damages.

## XV FIFTEENTH CAUSE OF ACTION

### Denial of equal educational opportunity prohibited
### (USC, Sukow, Drayton, Voyda)

109.     Plaintiff incorporates by reference and realleges paragraphs 1-109 of this Complaint.

110.     The groundless and discriminatory stay away order issued by Defendant Voyda and its implementation by DPS officers and Defendant Sukow was oppressive, resulted in a false arrest and imprisonment, and prevented the Plaintiff from completing his studies at USC or transferring credit from elsewhere to complete the same program, leaving the Plaintiff in indefinite limbo in violation of his rights under 42 U.S.C. §§ 1981, 1982, 1986 and 2000d.

## XVI SIXTEENTH CAUSE OF ACTION

### Declaratory Relief

111.     Plaintiff incorporates by reference and realleges paragraphs 1-111 of this Complaint.

2:10-CV-09827-UA    AMENDED COMPLAINT    DOUG KISAKA v UNIVERSITY OF SOUTHERN CALIFORNIA

112.     There is a real and actual controversy between plaintiffs and defendants regarding whether defendants may undertake to act as described herein.  Plaintiff contends that Defendants violated the United States and California Constitutions and the laws of the United States and of California.  On information and belief, Defendants may deny that their conduct violated the United States and California Constitution and the laws of the United States and of California. Plaintiff fears that he will again be subjected to such unlawful and unconstitutional actions, and seeks a judicial declaration that Defendants' conduct deprived Plaintiff of his rights under the United States and California Constitution and the laws of the United States and California.

## XXIV. PRAYER

WHEREFORE, plaintiff prays that the Court, as to all the defendants and each of them jointly and severally:

1. Issue a declaratory judgment that Defendants' conduct as complained herein was a violation of Plaintiff's rights under the United States and California Constitution and the laws of the United States and California.

2. Issue an injunction

    a. Ordering Defendants USC, Drayton and Voyda to rescind and void the stay away order and cease from its implementation forthwith.

    b. Ordering USC to void the questionable alteration of the Petitioners student status during the investigation by the Department of Education falsely portraying him as a non-

student to assert the lack of jurisdiction of any investigatory authority or court.

c. Ordering USC to preserve Plaintiff's standing in their computer system as a graduate student to allow Plaintiff to resolve outstanding bills and complete any remaining degree requirements in the Master's Degree program in Electrical Engineering.

d. Ordering USC campus police to cease from stalking, following or surveilling the Plaintiff.

e. Enjoining all Defendants from any retaliatory action against Plaintiff or any action that would harm Plaintiff, alter his status unfavorably, or give Defendants an unfair advantage, or imperil the completion of his studies.

f. Ordering the Defendants not to engage in unlawful searches and seizures, false arrests or false imprisonment of Plaintiff.

g. Ordering the Defendants not to engage in any other unlawful searches and seizures, false arrests or false imprisonments of African American students.

h. Ordering the Defendants to cease and desist from racial profiling and pretextual stops of African American students.

i. Ordering Defendant Chief Drayton and USC to require that all DPS officers involved in this case participate in racial sensitivity training to assure that there officers do not act due to bias based on race or ethnicity.

3. Award compensatory and general damages against Defendants and each of them, for plaintiff in an amount to be determined according to proof;

2:10-CV-09827-UA      AMENDED COMPLAINT      DOUG KISAKA v UNIVERSITY OF SOUTHERN CALIFORNIA

4. Award exemplary and punitive damages against all defendants sued in their individual capacities in an amount to be proven at trial;

5. Award statutory damages and penalties pursuant to California Civil Codes § 52(b);

6. Award Plaintiff costs, expenses and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, California Civil Code §§ 52(b) and 52.1(b) and California Code of Civil Procedure § 1021.5; and Grant such other and further relief as the Court may deem just and proper.

## XVII DEMAND FOR JURY TRIAL

Pursuant to Rule 3 8(b), Federal Rules of Civil Procedure Plaintiff demands trial by jury for all the issues plead herein as triable.

Dated December 20th 2010

Doug Kisaka

Plaintiff

2:10-CV-09827-UA      AMENDED COMPLAINT      DOUG KISAKA v UNIVERSITY OF SOUTHERN CALIFORNIA

Endnotes:
_____

i The Second Circuit Court of Appeals held that the equal benefit clause of 42 U.S.C. § 1981 permits students of a private university to sue it for false arrest, without making a showing of state action.  See Phillip v. University of Rochester, 316 F.3d 291 (2d Cir. 2003).

ii Cannon v. University of Chicago, 441 U.S. 677 (1979)[1], the United States Supreme Court case interpreted Congressional silence in the face of earlier interpretations of similar laws (42 U.S.C. § 1982) to determine that Title IX of the Higher Education Act provides an implied cause of action.

iii 42 U.S.C. § 1986: Inculpates bystander defendants - local actors in a position to intervene in prohibited conspiracies and renders them liable to victims of conspiratorial violence, thus focusing on those in the best position to stop the violence.

iv Cal Article 1, § 7(a):  Asserts a person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws;

v Cal Article 1, § 13: Asserts the right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated

vi California Civil Code § 52.1(b): Asserts the right of the individual to sue when his or here exercise or enjoyment of rights secured by the Constitution or laws of

the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with.

(d) A violation of a preliminary or permanent injunction in an action brought pursuant to subdivision § 52(b), is a crime punishable under Section 422.77 of the Penal Code.

vii California Government Code §§ 11135-11139: Bars any person or institution receiving any financial assistance from the state from discrimination or the denial of full and equal benefits on the basis of race, national origin, ethnic group identification, religion, age, sex, color, or disability.

viii 42 U.S.C. § 2000d: Prohibits against exclusion from participation in, denial of benefits of, and discrimination under federally assisted programs on ground of race, color, or national origin

FOR OFFICE USE ONLY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Doug Kisaka a California Resident in Pro Se | CASE NUMBER |
| | |
| | 11cv01942-MMM (MAN) |
| PLAINTIFF(S) | |
| v. | |
| University of Southern California, See Attachment | |
| | **SUMMONS** |
| DEFENDANT(S). | |

TO:     DEFENDANT(S): _____

A lawsuit has been filed against you. FOR OFFICE USE ONLY

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Doug Kisaka_____, whose address is _10061 Riverside Dr. #711 Toluca Lake, CA 91602_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _3/15/2011_____           By: John Lopez

                                              Deputy Clerk

                                              *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

FOR OFFICE USE ONLY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Doug Kisaka

**DEFENDANTS**
The University of Southern California(USC), Officer J. Young, Officer C. Jimenez, Officer Josh Voyda, Officer Carey Drayton, Carol Sukow, DOES 7 through 10.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Doug Kisaka
10061 Riverside Dr. #711
Toluca Lake, CA 91602

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in this State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No  ☑ **MONEY DEMANDED IN COMPLAINT:** $ UNKNOWN

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
42 U.S.C. Sections 1981, 1982, 1986 and 2000d

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☑ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV11-1942

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)               CIVIL COVER SHEET                Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:**  (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOST ANGELES | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
    Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LOS ANGELES | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  2-08-11

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |





Handle with Care