1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS KISAKA,<br><br>          Plaintiff,<br><br>     vs.<br><br>UNIVERSITY OF SOUTHERN<br>CALIFORNIA, OFFICER J. YOUNG,<br>OFFICER C. JIMENEZ, OFFICER<br>JOSH VOYDA, CAREY DRAYTON,<br>CAROL SUKOW, DOES 7 THROUGH<br>10.<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CASE NO. CV 11-01942 MMM (MANx)

ORDER DENYING PLAINTIFF'S
MOTION FOR PRELIMINARY
INJUNCTION

Plaintiff Douglas Kisaka filed this action against defendants University of Southern California ("USC"), Officer J. Young, Officer C. Jimenez, Officer Josh Voyda, Carey Drayton, Carol Sukow, and certain fictitious defendants (collectively "defendants") on March 15, 2011.[1] Kisaka seeks declaratory, injunctive and monetary relief for allegedly discriminatory conduct by USC and its officers/employees. He asserts claims under the Fourth, Fifth and Fourteenth amendments to the Constitution, Title VI of the Civil Rights Act and other federal and state laws.[2]

---

[1] Complaint for Damages, Injunctive Relief and Declaratory Relief ("Complaint"), Docket No. 3 (Mar. 15, 2011).

[2] *Id.*, ¶ 4.

On May 24, 2011, Kisaka filed a second amended motion for preliminary injunction.[3] Defendants filed an opposition on October 14, 2011,[4] and Kisaka filed a reply on October 31, 2011.[5]

## I.  FACTUAL BACKGROUND

### A.    Allegations in Kisaka's Complaint

In 2006, Kisaka returned to USC as a graduate student to complete a master's degree in electrical engineering.[6] He had previously been a student at USC and received a master's degree in film/television production.[7]  Kisaka contends that, as an African-American,[8] "he ran into a pattern of civil rights violations by USC's Department of Public Safety ("DPS") targeting African American students."[9]

---

[3]Second Amended Motion for Preliminary Injunction and Accompanying Memorandum of Law ("Pl.'s Motion"), Docket No. 28 (May 24, 2011).  On August 1, 2011, the parties filed a stipulation to stay the case for 75 days so they could conduct a mediation.  (Stipulation to Stay Case to Permit Mediation, Docket No. 34 (Aug. 1, 2011).)   The court entered an order on the stipulation, stayed the case, and set a delayed briefing schedule.  (Minute Order, Docket No. 35 (Aug. 1, 2011).)  It directed that, if the case was not resolved, opposition to plaintiff's motion be filed by October 17, 2011, and any reply by October 31, 2011.  On October 5, 2011, John D. Weiss conducted a mediation.  He later reported that the "parties [were] unable to reach an agreement" on that date.  (Attorney Settlement Officer Proceeding Report, Docket No. 41 (Oct. 13, 2011) at 2.)  The parties filed their respective briefs shortly thereafter.

[4]Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Second Amended Motion for Preliminary Injunction ("Defs.' Opp."), Docket No. 42 (Oct. 14, 2011).

[5] Reply to Opposition to Second Amended Motion for Preliminary Injunction and Memorandum of Points and Authorities ("Pl.'s Reply"), Docket No. 43 (Oct. 31, 2011). Kisaka also filed an affidavit with his reply.  (Affidavit in Support of Reply to Opposition to Motion for Preliminary Injunction ("Pl.'s Affidavit"), Docket No. 43-1 (Oct. 31, 2011).)

[6]Complaint, ¶ 14.

[7]*Id.*

[8]*Id.*, ¶ 6.

[9]*Id.*, ¶ 15.

2

On February 22, 2010, Kisaka allegedly went to the USC Salvatori computer lab and was confronted by a student worker who asked for his identification card.[10]  Kisaka did not have the card with him.[11]  Since he was purportedly the only one in the lab who was asked to provide identification, Kisaka concluded that he was being "singled-out" because he was African-American.[12]  Shortly thereafter, two public safety officers approached Kisaka, "harshly" questioned him and commented on his appearance.[13]  The following day, Kisaka learned from Bert, an African-American who worked in the computer lab, that campus police were planning to arrest Kisaka if he returned to campus.[14]  As a result, Kisaka attempted to file a complaint on February 24, 2010; after being notified that he had to speak to the watch commander, Kisaka left and did not file a written complaint.[15]

Kisaka alleges that on March 26, 2010, he was invited to participate in a recruiting program for prospective engineering students, which was to be held on the USC campus.[16]  As Kisaka was leaving the event, he was arrested by officers for trespass.[17]  He was purportedly booked and released after two days.[18]  Kisaka believes the arrest occurred due to the computer lab

---

[10]*Id.*, ¶ 26.

[11]*Id.*

[12]*Id.*

[13]*Id.*, ¶ 27.

[14]*Id.,* ¶ 28.

[15]*Id.*, ¶ 30.

[16]*Id.,* ¶ 17.  *See also* Pl.'s Motion, Exh. A.  Exhibit A is a January 29, 2010 letter from the USC Viterbi School of Engineering inviting Kisaka to a luncheon for potential USC graduate students.

[17]Complaint, ¶ 17.

[18]*Id.*, ¶ 19.  *See also,* Pl.'s Motion, Exh. D (Superior Court of California, County of Los Angeles, Probable Cause Determination (Declaration)), and Exh. E. (Arrest Report).  Kisaka asserts that the Los Angeles Superior Court dismissed all charges arising from the March 2010 arrest.  (*Id.*, ¶ 36; Pl.'s Motion, Exh. B (Los Angeles Superior Court Order for Sealing and

incident in February 2010,[19] and asserts that a stay-away order was issued after the February incident.[20] Due to the stay-away order, Kisaka cannot communicate with the school or enroll as an "off-campus student."[21]

Kisaka's complaint discusses numerous incidents in which he was allegedly followed, stopped and questioned by USC officers between 2007 and 2010.[22] It also describes different dates on which a USC security white SUV followed him or surveilled his residence.[23] Kasaka alleges, for example, that on March 6, 2008, he received permission from the pastor of the Untied University Church at USC to stay overnight in the church.[24] He contends that five DPS officers "burst" into the church and began questioning him as to why he was there.[25] Kisaka asserts the only reason the officers left was because a white student confirmed that he had permission to stay overnight.[26] When plaintiff complained to the DPS, he allegedly received a formal apology from DPS Chief Carey Drayton.[27]

On November 26, 2010, Kisaka was purportedly near the USC campus when two USC campus patrol cars stopped him.[28] He asserts that four officers approached him, handcuffed him

_____

Destruction of Arrest Records Pursuant to Penal Code section 851.8, dated May 1, 2010, and Exh. C (Case History).)

[19]Complaint, ¶ 25.

[20]*Id.,* ¶ 32.

[21]*Id.,* ¶ 35.

[22]*See e.g. id.,* ¶¶ 37-51.

[23]*See id.*

[24]*Id.,* ¶ 50.

[25]*Id.*

[26]*Id.*

[27]*Id.,* ¶ 51.

[28]*Id.,* ¶ 44.

4

and asked for his address. Kisaka refused to tell the officers his home address and was taken to the police station.  Kisaka reported this incident to Los Angeles Police Department ("LAPD") "Senior Lead Officer" Garner on December 2, 2010.[29]  The remainder of Kisaka's complaint describes other similar incidents during which various "officers," presumably employed by DPS, purportedly patrolled him for no legitimate reason.[30]

## B.   Evidence Submitted with Kisaka's Motion for Preliminary Injunction

In his motion for a preliminary injunction, Kisaka contends that the stay-away order was issued under the "false assertion" that he was a non-student at the time.[31]  Kisaka asserts he was

---

[29]*Id.*

[30]Kisaka alleges, for example, that on May 24, 2010 at approximately 7:40 p.m., Officer Young and another DPS officer in a "white SUV" saw him at the intersection of Vermont and Jefferson where he was waiting for a bus. (*Id.*, ¶ 38.) Kisaka asserts the officers "drove past staring directly" at him, then allegedly made a u-turn to "glance" at him again. (*Id.*)
        In an incident that took place on May 30, 2010, four white DPS security SUV's purportedly "drove slowly past" Kisaka's residence and did not appear to be "going anywhere in particular." (*Id.*, ¶ 39.)
        The complaint asserts that on June 9, 2010 at 7:30 p.m., Kisaka was returning home when he saw a white SUV and thought the car was following him. (*Id.*, ¶ 41.) Even after he detoured, the SUV purportedly followed him and two DPS officers allegedly "trad[ed] glances" with him. (*Id.*)
        Kisaka identifies still other incidents in which DPS officers in white SUVs allegedly followed him for no apparent reason. (*Id.*, ¶¶ 37-51.) On one occasion, he stopped to take rest near or in the back alley of an apartment complex. (*Id.*, ¶ 47.) A Hispanic handyman and Korean building manager asked him to leave, and then called DPS when Kisaka said he was on public property and refused to leave. (*Id.*) The DPS officer who arrived on the scene allegedly "became belligerent" when Kisaka refused to leave, and Kisaka "acquiesced under threat." (*Id.*)

[31]Pl.'s Motion, at 5. The parties do not explain why a stay-away order was issued against Kisaka. Exhibit E to Kisaka's motion for preliminary injunction is the second page of a police report concerning the March 26, 2010 arrest that briefly discusses the stay-away order. It states:
        "On 3/2/10 USC Det. Josh Voyda issued a stay away letter to Kisaka and it was received and signed for on 3/18/10. On 3/26/10 at approximately 1200 hours, [witness] Carolyn Sukow observed Kisaka on USC property attending a university event. She recognized him as a subj[ect] who was issued a stay away letter, and immediately called USC DPS Communications concerning the subj[ect]. Officers made contact with Kisaka at the above location and confirmed his identification along with his Trespass status." (Pl.'s Motion, Exh. E (Arrest Report).)

completing an "extended class project under authorization from [the] faculty" at the time of the computer lab incident and his subsequent March 2010 arrest.[32]  He also contends that he was awarded $20,000 in financial aid in April 2010, which he would not have received had he been an "out-of-status" student.[33]  When Kisaka applied for further financial aid in August 2010, however, his application was purportedly denied due to his status as a "non-student."[34]

### 1.    Exhibits Attached to Kisaka's Motion

Kisaka attaches five exhibits to his motion.  Exhibit A is a letter from USC's Viterbi School of Engineering inviting him to a luncheon for potential students.[35]  Exhibits B through E are documents related to his March 26, 2010 arrest, and the subsequent dismissal of trespass charges stemming from that arrest.  These include an order sealing the arrest records in his case, a probable cause determination, and an arrest report.[36]  Exhibit F is a print-out of a You-Tube page titled "John Ziegler Arrested/USC Katie Couric Award."[37]

Kisaka's motion does not properly authenticate the exhibits, and defendants object to their admission on that basis.[38]  While Kisaka failed to authenticate the exhibits, the court can nonetheless consider them at the preliminary injunction stage.  See *Flynt Distributing Co., Inc. v. Harvey,* 734 F.2d 1389, 1394 (9th Cir. 1984) ("[t]he trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before

---

This police report indicates that a stay-away order was issued on March 2, 2010, but provides no information concerning the basis for the order.

[32]Pl.'s Motion at 5.

[33]*Id.,* at 5-6.

[34]*Id.,* at 6.

[35]*Id.,* Exh. A.

[36]*Id.,* Exhs. B-E.

[37]*Id.,* Exh. F.

[38]Defs.' Opp. at 2.

trial"); see also *Ossur Holdings, Inc. v. Bellacure, Inc.,* Case No. 05-1552-JLR, 2005 WL 3434440, *3 (W. D. Wash. Dec. 14, 2005) ("[d]efendants move to strike exhibits submitted by [plaintiffs] on the basis that [p]laintiffs failed to sufficiently authenticate their submissions.  The court denies [d]efendants' request as the court has discretion to consider even inadmissible evidence for purposes of a preliminary injunction motion").  As Kisaka is proceeding *pro se*, and the court has discretion to consider inadmissible evidence in evaluating a motion for preliminary injunction, the court elects to consider the exhibits Kisaka has attached to his motion.

## 2.    Affidavit Filed with Kisaka's Reply

With his reply, Kisaka filed an affidavit discussing his status as a student at the time of the March 2010 arrest.[39]  The affidavit substantially mirrors the allegations in Kisaka's complaint and

---

[39]*See* Pl.'s Affidavit, ¶¶ 5-11.  Kisaka's affidavit was filed with his reply, not with his moving papers.  Rules 6(c)(2) of the Federal Rules of Civil Procedure requires that any affidavit supporting a motion be served with the motion.  Kisaka's affidavit is thus untimely.  The court has discretion to consider the affidavit, however, if the party "shows cause or excusable neglect for failing to comply with time provisions."  *Savage v. Liberty Mut. Fire Ins. Co.,* Case No. 09-0080-EJL, 2009 WL 2245133, at *2 (D. Idaho July 24, 2009) citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 896-97 (1990)).  Kisaka did not seek leave to file a late affidavit nor has he shown excusable neglect.

The affidavit is captioned "Affidavit in Support of Reply to Opposition to Motion for Preliminary Injunction."  Had it contained information responsive to arguments defendants made in opposition to the motion, the affidavit might have been proper.  See *Hammons v. Computer Programs and Systems, Inc.*, Case No. 05-0613-WS-C, 2006 WL 3627117, at *14 (S.D. Ala. Dec. 12, 2006) ("But nothing in the extant authorities, or in the Federal Rules of Civil Procedure, forbids a movant from making supplemental record submissions in a reply brief to rebut specific arguments raised by the non-movant's opposition brief" (citations omitted)).  Kisaka cannot to rebut arguments found in defendants' opposition, however, because defendants did not make specific factual arguments.  Instead, the affdvait was apparently filed in response to defendants' statement that Kisaka had not "filed *any* declaration to support any allegation of fact within the Motion."  (Defs.' Opp. at 2).  This is not an "invitation" for Kisaka to file a late affidavit, especially since the affidavit supports points made in his moving papers and does not rebut points made in opposition.  See *Savage,* 2009 WL 2245133 at *2 (granting motion to strike an untimely affidavit since "regardless of defendant's alleged invitation of the Affidavit or the relevance of the Affidavit . . . plaintiffs failed to file the Affidavit with their motion [ ], which motion the Affidavit allegedly supports.  In fact, the Affidavit was filed more than one month after the Motion [ ] was filed and with Plaintiffs' Reply").

Courts have stricken affidavits filed late by the moving party because the non-moving party

the statements in his briefs.  It also contains some new factual assertions, however.  Kisaka states that he was "unexpectedly" included in USC's May 2009 graduating class for his Master's degree.[40]  He asserts, however, that in the summer of 2009, a faculty committee at USC's school of engineering approved his request to work on an extended class project through April 2010.[41]

After his March 2010 arrest, Kisaka filed a complaint with the Department of Education Office of Civil Rights.[42]  When that office contacted USC's Office of Diversity and Equity, it was purportedly informed that Kisaka was a "non-student" at the time of the arrest; this precluded the Department of Education from investigating Kisaka's allegations of false arrest.[43]  Kisaka contends that USC's statement was false, and that he was a student because he received $20,000 in financial aid from USC in April 2010.[44]

Kisaka filed another complaint with the Department of Education that was investigated.[45]  When applying for further financial aid in August 2010, he discovered that his status had been

---

has had no opportunity to review or refute them.  See *In re Stone*, 588 F.2d 1316, 1321 (10th Cir. 1978) (affidavits filed the day of a hearing were not timely); *Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc.*, 446 F.2d 353, 355 (5th Cir. 1971) (reversing the entry of a preliminary injunction that relied, in part, on affidavits filed the same day as the hearing, since defendants were not given "adequate opportunity to prepare and present a factual showing controverting that of the plaintiffs").  Here, Kisaka's affidavit was untimely, and the court could strike it on that ground alone.  Defendants had an opportunity to review the affidavit, however, and object to its contents, and did not do so.  The court therefore exercises its discretion to consider the affidavit in deciding the motion.

[40]Pl.'s Affidavit, ¶ 5.  Kisaka states that he "never applied or asked" to be part of the 2009 graduating class.  (*Id.*, ¶ 11.)

[41]*Id.*, ¶ 9.

[42]*Id.*, ¶ 7.

[43]*Id.*

[44]*Id.*, ¶ 8.

[45]*Id.*

changed to "non-student," and that he was being refused further financial aid.[46]  Kisaka asserts that the reason he was classified as a "non-student" was that Associate Dean Kelly Goulis "falsely claimed . . . [he] had taken an unauthorized leave of absence from the university and [that he] would have to reapply to complete any remaining [course work]."[47]  Kisaka also contends that in a September 2010 email, Associate Dean Goulis "downgraded" his past performance, and "issued an implied threat of dismissal from the University" if his performance did not "balance out" the downgrade.[48]  Kisaka alleges that Goulis' conduct is evidence of discrimination and retaliation.[49]  Kisaka contends that if he is not readmitted, he will be liable for "tens of thousands of dollars in Federal Loans," and that his graduation will be viewed as "dubious or at worst scandalous" by other schools.[50]  He states that he will incur financial losses including "hundreds of thousands or millions of dollars in earnings" over his lifetime.[51]

Kisaka contends he is in fear of his life due to university police "constantly pursu[ing] him off-campus," and that he informed LAPD Officer Hawkins of his fear on June 12, 2010.[52]  Kisaka reiterates that he is being surveilled constantly, and once again describes the November 26, 2010 arrest during which he refused to give officers his address due to fear of retaliation.[53]  He contends he "relocated" in January 2011 and will not disclose his current whereabouts.[54]  Kisaka states that

---

[46] *Id.*

[47] *Id.*, ¶ 9.

[48] *Id.*, ¶ 10.

[49] *Id.*

[50] *Id.*, ¶ 12.

[51] *Id.*

[52] *Id.*, ¶ 2.

[53] *Id.*

[54] *Id.*

he is unable to walk within half a mile of the university without a disguise.[55]  He has been told by a "resident" that the campus police may "plan to silence [him] through a hired [third] party."[56] Due to his "terrible experience[s]," Kisaka is purportedly being treated for "Post Traumatic Stress and other Mood Disorders."[57]

## C.    Injunctive Relief Sought

Kisaka seeks the following forms of relief:

"a)    ORDERING . . . Defendants USC, Drayton and Voyda to rescind and void the Stay Away Order and cease from its implementation forthwith[;]

b)    ORDERING . . . USC, including the Department of Engineering [to] void the Plaintiff[']s non-student status[;]

c)    ORDERING[ ] that USC reinstate Plaintiff's student status to 'active[;]'

d)    ORDERING[ ] that USC take all necessary measures[ ] to assist Plaintiff to resolve outstanding matters with the university, including the completion of any remaining coursework in the Master's Degree program in Electrical Engineering[;]

e)    ORDERING[ ] that all Defendants [be] enjoined from any retaliatory, harmful or oppressive actions against Plaintiff, including actions that would unfavorably alter his student status, or give Defendants an unfair advantage during the course of the prosecution of this case, and during the completion of coursework in the Master's Degree program in Electrical Engineering[;]

f)    ORDERING[ ] that USC campus police cease from stalking, following or surveilling the Plaintiff[ ] forthwith[;]

g)    ORDERING[ ] that USC campus police . . . not engage in unlawful searches and seizures, false arrests or false imprisonment of Plaintiff, forthwith[, and;]

---

[55]*Id.*, ¶ 3.

[56]*Id.*

[57]*Id.*, ¶ 13.  Kisaka also states that his experiences have "exacerbated" other medical conditions, which include diabetes, high blood pressure and partial blindness.  (*Id.*)

h)      ORDERING, that all documents submitted by Defendants directly referring to the March 26th arrest (under LA Superior Court Sealing Order SO10-042)[,] including exhibits, shall be accompanied by a motion to file Request for Seal."[58]

## II.  DISCUSSION

### A.      Standard Governing Motions for Preliminary Injunctions

A "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008).  Thus, a district court should enter a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).   Such a showing requires that plaintiff establish he "is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  See *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) ("Under *Winter*, plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest").  See also *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) ("'To qualify for injunctive relief, the plaintiffs must establish that 'the balance of equities tips in [their] favor,'" quoting *Winter*, 555 U.S. at 20); *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits," citing *Winter*, 555 U.S. at 20); *Timbisha Shoshone Tribe v. Kennedy*, 687 F.Supp.2d 1171, 1182 (E.D. Cal. 2009) ("'Pursuant to *Winter*, [p]laintiffs must make a 'clear showing' that they are 'likely to succeed on the merits,'" quoting *Winter*, 555 U.S. at 22).  The Ninth Circuit has "articulated an alternate formulation of the *Winter* test, under which '"serious questions going to the merits" and a balance of hardships that tips sharply toward the plaintiff can support issuance of a

---

[58]Pl.'s Motion at 2-3.

preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

"[P]reliminary injunctive relief is available only if plaintiffs [also] 'demonstrate that irreparable injury is likely in the absence of an injunction.'" *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009) (quoting *Winter*, 555 U.S. 22).[59]  If the harm to plaintiff is merely monetary, it "will not usually support injunctive relief." *American Trucking*, 559 F.3d at 1057. See also *California Pharmacists Association v. Maxwell-Jolly*, 563 F.3d 847, 851-52 (9th Cir. 2009) ("Typically, monetary harm does not constitute irreparable harm. . . . Economic damages are not traditionally considered irreparable because the injury *can later be remedied by a damage award*" (emphasis original)).  In addition, harm that is "merely speculative" will not support injunctive relief, "although a loss of goodwill and reputation can do so." *American Trucking*, 559 F.3d at 1057.  "In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 542 (1987).

"In exercising their sound discretion, courts of equity should [also] pay particular regard

---

[59]Prior to the Supreme Court's decision in *Winter*, the Ninth Circuit had held that to prevail on a motion for preliminary injunction, a plaintiff must demonstrate either:

"either: (1) a likelihood of success on the merits and the *possibility* of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor.  These two alternatives represent extremes of a single continuum, rather than two separate tests.  Thus, the greater the relative hardship to the party seeking the preliminary injunction, the less probability of success must be shown." *Stormans*, 586 F.3d at 1127 (quoting *Clear Channel Outdoor Inc. v. City of L.A.*, 340 F.3d 810, 813 (9th Cir. 2003) (emphasis original)).

The *Winter* Court "definitively refuted" the Ninth Circuit's "possibility of irreparable injury" standard. *Id*.  It held that the "'possibility' standard [was] too lenient," and that "plaintiffs seeking preliminary relief [have] to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis original).  Following *Winter*, the Ninth Circuit has held that "[t]o the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable." *American Trucking*, 559 F.3d at 1052 (footnote omitted).

for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).[60]   "The public interest analysis for the issuance of a preliminary injunction requires [the court] to consider 'whether there exists some critical public interest that would be injured by the grant of preliminary relief.'" *California Pharmacists Ass'n v. Maxwell-Jolly*, 596 F.3d 1098, 1115 (9th Cir. 2010) (quoting *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1458 (Fed. Cir. 1988)).   "When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be 'at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction.'" *Stormans*, 586 F.3d at 1138-39 (quoting *Bernhardt v. L.A. County*, 339 F.3d 920, 931 (9th Cir. 2003)).   "If, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." *Id.* at 1139 (citing *Sammartano v. First Judicial District Court*, 303 F.3d 959, 965 (9th Cir. 2002)).   See also *Sierra Forest Legacy*, 577 F.3d at 1022 ("When deciding whether to issue a narrowly tailored injunction, district courts must assess the harms pertaining to injunctive relief in the context of that narrow injunction").   "[When] an injunction is asked which will adversely affect a public interest . . . the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Weinberger*, 456 U.S. at 312-13.

"The plaintiff[ ] bear[s] the initial burden of showing that [issuance of an] injunction is in the public interest." *Stormans*, 586 F.3d at 1139 (citing *Winter*, 555 U.S. 27).   The district court, however, "need not consider public consequences that are 'highly speculative.'"   *Id.* (quoting *Golden Gate Restaurant Association v. City & County of San Francisco*, 512 F.3d 1112, 1126 (9th Cir. 2008)).   "In other words, the court should weigh the public interest in light of the likely

[60]The *Winter* Court cautioned that "'*consideration of the public interest*' is mandatory 'in assessing the propriety of any injunctive relief.'"   *Nelson v. National Aeronautics and Space Administration*, 568 F.3d 1028, 1050 (9th Cir. 2009) (Kleinfeld, J., dissenting from denial of rehearing en banc) (quoting *Winter*, 555 U.S. at 32 (emphasis original)).

consequences of the injunction.  Such consequences must not be too remote, insubstantial, or speculative and must be supported by evidence." *Id.*

As a threshold matter, the moving party must establish a likelihood of success on the merits of his claims before a court can grant a preliminary injunction. *Winter*, 555 U.S. at 20.  In the Ninth Circuit, this threshold showing can be met by demonstrating that there are serious questions going to the merits of the claims.  If the moving party is unable to establish this element, the request for a preliminary injunction must be denied and the court need not review whether the moving party can satisfy the remaining requirements for a preliminary injunction. *See Jones v. Felker,* Case No. 08-006-FCD-EFB, 2010 WL 582131, *2 (E.D. Cal. Feb. 12, 2010) (because plaintiff "failed to show that he is likely to succeed on the merits of his claims, he is not entitled to a TRO or preliminary injunction and the court need not consider whether he has made the requisite showings of irreparable harm, favorable balance of the equities, or public interest"); see also *Dudum v. City and County of San Francisco*, Case No. 10-00504-RS, 2010 WL 1532365, *11 (N.D. Cal. Apr. 16, 2010) (denying a request for a preliminary injunction where plaintiff failed to show a likelihood of success on the merits).

### B.    Kisaka's Likelihood of Success on the Merits

Kisaka argues that the court should grant his motion for preliminary injunction because there is a substantial likelihood he will succeed on the merits of his claims, he faces a "substantial" threat of irreparable injury if no injunction issues, the balance of harm weighs in his favor, and the entry of an injunction would serve the public interest.[61]  Defendants counter that plaintiff's motion is "unsupported and improper," and seeks "an order summarily granting [p]laintiff all of the non-monetary relief sought . . . in his [c]omplaint."[62]  Although Kisaka alleges a variety of claims, they fall into three general categories: (1) claims based on racial discrimination; (2) claims based on unlawful conduct by USC campus police; and (3) various state law claims.  The court addresses each category in turn.

---

[61]Pl.'s Motion at 4.

[62]Defs.' Opp. at 1.

### 1.   Kisaka's Race Discrimination Claims

Kisaka argues that he is likely to succeed on the merits of his claims because the confrontation at the computer lab in February 2010 was based on his "ethnicity and the color of his skin," violating 42 U.S.C. § 1981.[63]  He asserts that the "Secret Conspiracy" to arrest him without a warrant, the stay-away order issued under "false" pretenses, and his false arrest and imprisonment in March 2010 violated 42 U.S.C. §§ 1981, 1982, 1986, and the Fourth, Fifth and Fourteenth Amendments.[64]  As evidence that he will succeed on the merits, Kisaka cites his "false arrest and imprisonment" in March 2010, and "multiple incidents of racial profiling."[65] Although he pleads sixteen causes of action, he does not associate particular alleged actions by defendants with particular claims.

Kisaka does not address any of the elements of his racial discrimination claims in his brief. He merely sets forth various facts and concludes that they support a finding of racial discrimination. Kisaka, for example, asserts racial discrimination claims under Title VI of the 1964 Civil Rights Act and the California Government Code.[66]  Title VI "prohibits exclusion based on race, color, or national origin . . . [and in order to] establish a prima facie case under Title VI,

---

[63]Pl.'s Motion at 4-5.  Kisaka pleads the following claims:  (1) race discrimination in violation of Title VI of the Civil Rights Act and 28 C.F. R. §§ 42101 *et seq.*, 42 U.S.C. § 1981; (2) race discrimination in violation of Title VI of the 1964 Civil Rights Act; (3) violation of Fourteenth Amendment and 42 U.S.C. § 1981; (4) violation of Fourteenth Amendment and 42 U.S.C. § 1981; (5) violation of 42 U.S.C. § 1981; (6) conspiracy to violate the Civil Rights Act, and 42 U.S.C. § 1986; (7) violation of Government Code §§ 11135 and 11139; (8) violation of Article 1, § 7(a) of the California Constitution; (9) violation of Article 1, § 13 of California Constitution; (10) violation of Civil Code § 52.1(b); (11) intentional infliction of emotional distress; (12) negligent infliction of emotional distress; (13) negligent infliction of emotional distress; (14) negligent employment/supervision; (15) denial of equal educational opportunity prohibited, and; (16) declaratory relief.  (Complaint, ¶¶ 59-112.)

[64]*Id.*

[65]Pl.'s Reply, at 5.

[66]Complaint, ¶¶ 59-69.  The first and second claims allege section 1981 violations.  The seventh cause of action arises under California Government Code provisions prohibiting discrimination.  (*Id.*, ¶¶ 59-69, 84-88.)

plaintiffs must show either discriminatory intent or discriminatory effect." *Quiroz v. State Board of Education*, Case No. 97-1600-WBS/GGH, 1997 WL 661163, *3 (E.D. Cal. Sept. 10, 1997) (citing *Teresa P. v. Berkeley Unified School Dist.*, 724 F.Supp.696, 716 (N.D. Cal. 1989)). Kisaka has proffered no evidence that USC or its personnel acted with discriminatory intent or that their conduct had a discriminatory effect. Kisaka simply states that he was asked for identification in the computer lab and that, because "no other students were being checked," the request must have been based on his ethnicity or race.[67] Kisaka adduces no evidence to support his speculative assertion regarding the reason for the request.

*Jones v. University of California Santa Cruz*, Case No. 94-20548-RPA (PVT), 1995 WL 39483 (N.D. Cal. Jan. 30, 1995), a racial discrimination case by a student against his school, is instructive. Jones was a chemistry Ph.D. student; an examination committee failed him due to inadequate work and a defective research proposal. *Id.* at *2. He filed race discrimination claims, *inter alia*, under Title VI and Title VII, and sought a preliminary injunction. *Id.* The university presented evidence as to why Jones was dismissed from the graduate program. The court found that plaintiff had not adduced "even a scintilla of evidence to suggest that the

---

[67]Pl.'s Motion at 4-5. Kisaka's affidavit does not discuss this incident, or contain any information regarding alleged incidents of racial discrimination. Rather, in his motion, Kisaka discusses "numerous incidences of racial profiling." These purportedly include the fact that "USC's Center for Black Cultural and Student Affairs has reported a policy increasingly employed by the USC campus police to approach, stop and question, and sometimes arrest students of African American de[s]cent while generally giving Asian or white[ ] students, wealthy frat students and sports athletes a free pass or a pat on the wrist. . . ." (Pl.'s Motion at 9.) Kisaka adduces no evidence of the policy or report.

He also contends that he "has been stalked, stopped, questioned or handcuffed time after time without probable cause by campus police since 2008, to such an extent that the Plaintiff had to report the matter to the Los Angeles Police Department. . . ." (*Id.*) Kisaka's affidavit details various encounters he has had with the USC police, but his descriptions are vague and conclusory. He cites an incident that purportedly took place on November 26, 2010, for example, in which he was "handcuffed [and] patted down, before they threatened to book me at a nearby police station if I wouldn't disclose where I lived." (Pl.'s Affidavit, ¶ 2.) Kisaka states that the campus police "backed off after I invoked the names, Captain Steve Zipperman, Commanding Officer, Southwest Division, and his officer with jurisdiction over the USC area – Senior Lead Officer Garner. . . ." (*Id.*) Kisaka presumably suggests that these incidents are circumstantial evidence of racial discrimination; the facts stated in the affidavit do not support this contention, however.

University discriminated against him because of his race." *Id.* at *6. Rather, it observed, the evidence Jones proffered "essentially amount[ed] to his personal belief that the University's actions were racially motivated." *Id.* It held that such "conclusory allegations of discrimination[ ] . . . have no probative force." *Id.* (citing *Mitchell v. Toledo Hospital,* 964 F.2d 577, 585 (6th Cir. 1992)). Because it concluded that plaintiff had "little or no chance of prevailing on the merits" of his claims, the court denied his request for preliminary injunctive relief. *Id.* Similarly here, Kisaka has adduced no evidence supporting his racial discrimination claims or any of his other claims. A preliminary injunction cannot be granted based merely on Kisaka's unsupported belief that the university discriminated against him due to his race.

Kisaka also asserts violations of the Equal Protection Clause throughout his complaint.[68] The Equal Protection Clause of the Fourteenth Amendment states: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., Amend. XIV, § 1. Under "conventional equal protection analysis, a reviewing court must analyze all racial classifications imposed by state action under 'strict scrutiny.'" *Coalition to Defend Affirmative Action, Integration and Immigrant Rights v. Schwarzenegger,* Case No. 10-641 SC, 2010 WL 5094278, *4 (N.D. Cal. Dec. 8, 2010) (citing *Grutter v. Bollinger,* 539 U.S. 306, 326 (2003)). Kisaka adduces no evidence that he was denied equal protection due to his race or subjected to disparate treatment based on race. His assertion to the contrary is based on speculation about the motives of USC and its agents, and does not indicate that he will succeed on the merits of his claims.

### 2.    Kisaka's Claims Related to Unlawful Search and Seizure

The second broad category of Kisaka's claims relate to his alleged unlawful search and seizure by university personnel.[69]    Under the Fourth Amendment to the U.S. Constitution,

---

[68]The third cause of action states that defendants violated plaintiff's "right to equal protection of the laws." (Complaint, ¶ 7.) The third, fourth, fifth, eighth and fifteenth causes of action also assert some type of equal protection violation. (*Id.,* ¶¶ 70-80, 89-90, 109-110.)

[69]The fourth and ninth causes of action allege that USC officers committed "unreasonable searches and seizure[s]" of Kisaka. (Complaint, ¶¶ 74-77, 91-92.) Given the court's conclusion,

individuals have the right to be "secure in their persons, houses, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. Thus, it has been established that "warrantless searches and seizures subject to the Fourth Amendment ha[ve] to comport at least with the Amendment's long established minimum requirement that they be 'reasonable under the circumstances.'" *Orega v. O'Connor*, 146 F.3d 1149, 1157-58 (9th Cir. 1998) (citing *Terry v. Ohio,* 392 U.S. 1 (1968)). Kisaka offers no argument, much less evidence, that shows he is likely to succeed on the merits of his "unreasonable search and seizure" claims. For example, Kisaka states that he was arrested for trespass when he was leaving the university campus.[70] He provides no information about the circumstances of the arrest, however, nor any facts indicating that it was in any way unjustified or unreasonable.[71] The court cannot thus determine whether Kisaka's detention on that occasion, or any other, was unreasonable or unjustified.

Kisaka's affidavit also contains allegations concerning unlawful intrusions into his privacy. The affidavit, however, is little more than a collection of conclusory statements, speculative allegations, and vague references that, for the most part, repeat the allegations of his complaint and the arguments asserted in his briefs. See *American Passage Media Corp. v. Cass Communications, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (discrediting affidavits that were "conclusory and without sufficient support in facts"). The affidavit reports that Kisaka was stopped by the police on November 26, 2010,[72] that he can no longer walk around campus without

_____

it will not address Kisaka's failure to allege a critical requirement of Fourth Amendment claims, i.e., that USC officials acted "under the color of state law," *Ennis v. City of Daly City*, 756 F.Supp.2d 1170, 1773 (N.D. Cal. 2010), or were state actors for purposes of the Fourth Amendment.

[70]*Id.*, ¶ 17.

[71]Kisaka's affidavit offers no additional information about this arrest, referring only to "a false arrest and imprisonment[ ] at the end of a recruiting event to which [he] was invited to on March 26th, 2010. . . ." (Pl.'s Affidavit, ¶ 2.)

[72]*Id.*, ¶ 2.

a disguise,[73] that there is a possibility campus police are using his "private" information,[74] that he was a student when the school labeled him a "non-student,"[75] that there is a "real possibility of retaliation,"[76] that he is being treated for post traumatic stress and other mood disorders as a result of his "terrible experience,"[77] and more.  His affidavit merely repeats material in his complaint and moving papers, and consequently must be disregarded.

Kisaka contends that dismissal of the trespass charge against him is proof that he will succeed on the merits of his Fourth Amendment claims.[78]  Exhibits B through E to his motion concern his March 26, 2010 arrest.[79]  Exhibit B is the Los Angeles Superior Court's order sealing the arrest record,[80] while Exhibit C appears to be the arrest record or summary of the arrest and

---

[73]*Id.*, ¶ 3 ("I can no longer walk anywhere within a ½ mile fo the perimeter of the university campus without a hooded disguise, and generally travel at night in the area.").

[74]*Id.,* ¶ 4 ("Given the abuses and their unauthorized distribution of my private Facebook photos (only available to friends), which I accidentally spotted on their campus police computer laptop during the March 2010 arrest, I believe there is the potential that they may use the Internet for defamatory and intimidation purposes or even to prejudice this case . . . I can only speculate what other private information may have been obtained through electronic surveillance, an internet service provider or social network including the universities [sic] email service . . .").

[75]*Id.,* ¶ 9.

[76]*Id.,* ¶ 10 ("There is the real possibility that this threat and other forms of retaliation will be carried out given the pattern of discrimination, abuse, oppression and adverse opaque decision making outlined in the complaint"); *id.*, ¶ 11 ("Because the university chose to include me in its graduation class [sic] of 2009, for which I never applied or asked, they now have me 'over a barrel' where the real possibility of retaliation exists if I take any action against the university, where I could be denied the 2nd Masters degree and never know who made the decision").

[77]*Id.,* ¶ 13 ("As a direct result of this terrible experience, I am now being treated for Post Traumatic Stress and other Mood Disorders.  The experience also exacerbated other conditions from which I suffer including diabetes, high extreme blood pressure, and partial blindness").

[78]Pl.'s Motion at 5; Pl.'s Motion, Exh. B; Pl.'s Reply at 5.

[79]*Id.,* Exhs. B-E.

[80]*Id.,* Exh. B.

subsequent court proceedings.[81]  Exhibit D is the Los Angeles Superior Court's "Probable Cause Determination (Declaration)."[82]  This appears to be Officer Young's declaration regarding the arrest.[83]  Exhibit E is the second page of a police report concerning the arrest.[84]  While these documents demonstrate that the arrest occurred and that criminal charges against Kisaka were eventually dismissed, none of the evidence demonstrates that defendants acted unlawfully or violated Kisaka's civil rights.  While the fact that criminal charges were eventually dismissed may be marginally probative, in no way does it establish that Kisaka is likely to succeed on any claims related to that arrest.  See *Rabon v. Great Southwest Fire Ins. Co.*, 818 F.2d 306, 309 (4th Cir. 1987) ("a prosecutor's decision not to prosecute and a jury's decision to acquit in a criminal trial are based on different criteria than apply in a civil proceeding"); *Wisler v. City of Fresno*, No. CV F 06-1694 AWI SMS, 2008 WL 2880442, *2 (E.D. Cal. July 22, 2008) ("In contrast, testimony that the district attorney offered to drop the assault charge is unduly prejudicial and time consuming.  The inference from this evidence is that the district attorney considered all of the information and concluded that the assault charge lacked merit or the assault did not happen. In other words, the district attorney made a credibility determination against [the officer]. However, credibility is an issue for the jury (not the district attorney), and there is no explanation why the district attorney was willing to drop the assault charge, be it a disbelief of [the officer] or an overcrowded trial calendar").  Cf. *Borunda v. Richmond*, 885 F.2d 1384, 1387 (9th Cir.1989) ("Evidence of an acquittal is not generally admissible in a subsequent civil action between the same parties since it constitutes a 'negative sort of conclusion lodged in a finding of failure of the prosecution to sustain the burden of proof beyond a reasonable doubt,'" citing *United States v.*

---

[81]*Id.,* Exh. C.

[82]*Id.,* Exh. D.

[83]*Id.*

[84]*Id.,* Exh. E.

1  *Moses*, 796 F.2d 281, 283 (9th Cir. 1983)).[85]

2  **3.   Kisaka's Remaining Claims**

3  In addition to the claims detailed above, Kisaka asserts causes of action for intentional and

4  negligent infliction of emotional distress;[86] conspiracy to violate civil rights under 42 U.S.C.

5  § 1986;[87] negligent supervision;[88] and declaratory relief.[89]

6  The elements of intentional infliction of emotional distress are:  (1) defendant's outrageous

7  conduct; (2) defendant's intention to cause, or reckless disregard of the probability of causing,

8  emotional distress; (3) severe emotional distress; and (4) an actual and proximate causal link

9  between the tortious conduct and the emotional distress.  *Wilkerson v. Butler*, 229 F.R.D 166, 171

10  (E.D. Cal. 2005).[90]   The conduct must be "so extreme as to exceed all bounds of that usually

11

12  [85]Kisaka also asserts a claim under California Civil Code § 52.1, which provides a cause

13  of action "against anyone who interferes, or tried to do so, by threats, intimidation, or coercion,

14  with an individual's exercise or enjoyment of rights secured by federal or state law."  *Knapps v.*

15  *City of Oakland,* 647 F.Supp.2d 1129, 1168 (N.D. Cal. 2009) (citations omitted).  Kisaka alleges

16  that defendants' conduct "interfered and/or attempted to interfere with [his] exercise and/or

17  enjoyment of . . . rights . . . secured by the United States Constitution and/or enjoyment of [such]

18  rights. . . ."  (Complaint, ¶ 94.)   He does not specify the constitutional violations at issue, but

19  merely incorporates and realleges all preceding paragraphs of the complaint.  (*Id.*, ¶ 93.)  To

20  obtain relief, plaintiff must prove that a "defendant tried to, or did, prevent the plaintiff from

21  doing something that he had the right to do under the law, or to force plaintiff to do something that

22  he was not required to do under the law."  *Knapps*, 647 F.Supp.2d at 1168.  As Kisaka has not

23  presented any evidence that he is likely to succeed in asserting any of the constitutional violations

24  mentioned in his complaint, this claim also fails.

[86]The eleventh cause of action alleges intentional infliction of emotional distress, while the
twelfth and thirteenth causes of action alleges negligent infliction of emotional distress.
(Complaint, ¶¶ 95-101.)

[87]*Id.*, ¶¶ 81-83.

[88]*Id.*, ¶¶ 102-108.

[89]*Id.*, ¶¶ 111-112.

[90]For Kisaka to prevail on his negligent infliction of emotional distress claims, he must also
prove that a duty exists.  See *Mehta v. Wells Fargo Bank, N.A.*, 737 F.Supp.2d 1185, 1203 (S.D.
Cal. 2010).  Kisaka offers no facts showing that university personnel owed him a duty not to

tolerated in a civilized community." *Duste v. Chevron Products Co.,* 738 F.Supp.2d 1027, 1039 (N.D. Cal. 2010) (citations omitted).   Kisaka does not proffer any evidence that he is likely to succeed on the merits of his intentional infliction of emotional distress claim.   He summarizes instances in which university officers "followed" him, stopped him to ask questions, and arrested when he was on campus.[91]   He adduced no evidence that any of these events occurred as he contends, much less any indication that the officers' conduct was in any way "outrageous."

Similar defects defeat Kisaka's other claims.   Kisaka does not explain which events, if any, support his conspiracy, negligent supervision, and declaratory relief claims.   For example, in discussing the conspiracy cause of action, Kisaka states only that defendants acted "in concert with one another, and by way of a conspiracy among them," denied him equal protection of the laws.[92] This type of conclusory statement fails even to mention, let alone support, the elements required to prevail on a civil rights conspiracy claim.   See *Center for Legal Studies, Inc. v. Lindley*, 64 F.Supp.2d 970, 979 (D. Or. 1999) (noting that the elements of a conspiracy to violate civil rights claim are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of the equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States").   The fourth element of such a claim requires him to demonstrate that he was actually deprived of civil rights in some way; Kisaka's failure to show any likelihood that he will prevail on any of his civil rights claims also means he cannot show a likelihood of success on the conspiracy claim.

Kisaka's negligent supervision claim similarly lacks evidentiary support.   The claim alleges

---

engage in the conduct alleged, or that such duty was breached.   He simply concludes that the conduct "constituted a breach of defendants' duty of care to plaintiff."   (Complaint, ¶ 98.)

[91]Kisaka does not specify the particular events giving rise to his intentional and negligent infliction of emotional distress claims.   He simply references all allegations in the complaint as factual support for the claims.   (Complaint, ¶¶ 95, 97, 99.)

[92]*Id.,* ¶ 82.

that defendants USC and Chief Drayton "should have known that several DPS officers . . . had a propensity, character traits and practice . . . for bigotry and/or excessive aggressiveness and/or dishonesty and/or prevarication."[93]   "Liability for negligent hiring/retention occurs when the employer knew or should have known that hiring or retaining the employee created a particular risk or hazard and that particular harm materializes."  *Garcia ex rel. Marin v. Clovic Unified School Dist.*, 627 F.Supp.2d 1187, 1208 (E.D. Cal. 2009) (citations omitted).  Kisaka has proffered no evidence that the officers could not be trusted to act properly without supervision, or that USC and Drayton should have known this.  Kisaka, moreover, does not identify which of the officers' actions support the claim.

Kisaka also seeks a declaration that defendants violated his constitutional and civil rights.[94] Plaintiffs who seek prospective injunctive or declaratory relief must "adduce a 'credible threat' of recurrent injury" to demonstrate they have standing to sue.  *LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir. 1985); see also *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001) ("[W]here, as here, a plaintiff seeks prospective injunctive relief, he must demonstrate 'that he is realistically threatened by a *repetition* of [the violation],'" quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (emphasis original)); *Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1985) ("The likelihood of the injury recurring must be calculable and if there is no basis for predicting that any future repetition would affect the present plaintiffs, there is no case or controversy").  Kisaka has not indicated what conduct, if any, he fears will be "repeated." Moreover, his complaint suggests that the declaratory relief claim does not seek prospective relief, but that it is merely duplicative of his civil rights claims.  On this basis, it is subject to dismissal. See *Mangindin v. Washington Mut. Bank* , 637 F.Supp.2d 700, 707–08 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action").

Additionally, Kisaka has failed to adduce evidence showing that he is likely to prove a

---

[93]*Id.*, ¶ 103.

[94]*Id.*, ¶¶ 111-112.

violation of his civil or constitutional rights. Just as this makes it unlikely he will succeed on the merits of his civil rights claims, it makes it unlikely he will succeed on the merits of the declaratory relief claim as well. See *Teahan v. Wilhelm,* Case No. 06-CV-15-JM (PCL), 2007 WL 5041440, *3 (S.D. Cal. Dec. 21, 2007) (denying a claim seeking a declaration that "the acts and omissions described herein violated the Plaintiff's rights under the constitution and laws of the United States," since plaintiff's purpose in requesting "declaratory relief based on the alleged facts is unclear . . . [and] what Plaintiff desires the Court to declare unconstitutional is ambiguous").

Finally, the remaining exhibits Kisaka attaches to his motion do little to support his contentions. Exhibit A is correspondence from the Viterbi School of Engineering inviting him to a luncheon to recruit potential students.[95] While this piece of correspondence appears related to his allegation that he attended a recruiting event and was subsequently arrested, it does not show that the arrest was unlawful in any way. Similarly, Exhibit F is a print-out of a You-Tube page titled "John Ziegler Arrested/USC Katie Couric Award."[96] Ziegler is not a party to this action, and the video has no apparent relevance to any of Kisaka's claims.

In sum, Kisaka has failed to carry his burden of showing that he is likely to succeed on the merits of any of his claims. Consequently, this factor weighs heavily against granting injunctive

---

[95]Pl.'s Motion, Exh. A.

[96]*Id.,* Exh. F. Kisaka states that John Ziegler, the individual in the You-Tube video, was a white individual who trespassed a ceremony at USC. (Complaint, ¶ 105.) Kisaka believes that this YouTube clip is evidence of USC officers' "harsh treatment" of its arrestees. (*Id.*) The court is not presented with any indication as to to why this "harsh treatment" is relevant to Kisaka's claims, or how it bears any relevance for his motion for preliminary injunction.

Kisaka also uses the video clip to support his contention that he was treated differently due to his race. He states that the individual in the YouTube clip "happens to be white and was held for only a few minutes before being freed without charge" whereas Kisaka, who is African American, was imprisoned for two days. (*Id.*, ¶¶ 105-106.) Kisaka offers no foundation for his assertion as to what happened to the clip's subject. Even if the court could take Kisaka's contention as true, this lone fact adds nothing to his claims of racial discrimination, since there is no evidence that any differences in treatment were racially motivated or made pursuant to a pattern of discriminatory conduct on the part of USC, rather than other nondiscriminatory reasons.

relief.   See, e.g., *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1385 (9th Cir. 1987) ("Because Carbide failed to show a likelihood of success on the merits, we need not decide whether denial of the injunction will lead to irreparable injury.   In order for Carbide to be granted a preliminary injunction on the ground it asserts, it must show *both* a probability of success on the merits *and* the possibility of irreparable injury" (emphasis original)).

### C.   Irreparable Harm

Because Kisaka has failed to show that he is likely to prevail on any of his causes of action, the court need not consider the remaining requirements for issuance of preliminary injunctive relief. *Department of Parks and Recreation of the State of California v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1123-24 (9th Cir. 2006) ("'If the plaintiff shows no chance of success on the merits, . . . the injunction should not issue,' because '[a]s an irreducible minimum, the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation," quoting *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987)).

Even had Kisaka demonstrated a likelihood of success on the merits, however, he would not be entitled to preliminary injunctive relief because he has failed to show that he will suffer irreparable injury if an injunction does not issue.   Kisaka contends that if defendants are not enjoined, he "stands to lose an indefinite number of months or years" if not permitted to enroll as a student or if the "discriminatory" stay away order is not rescinded.[97]   The stay away order purportedly "leaves [Kisaka] in indefinite limbo."[98]   Kisaka also asserts that he is in fear of his life, has to wear a disguise, and has entered a treatment program for post-traumatic stress.[99]

---

[97]Pl.'s Motion at 10.

[98]*Id.*   Kisaka contends that if USC does not readmit him, other universities and possible employers will view his 2009 graduation as "dubious or at worst scandalous, not to mention the financial loss incurred perhaps in the hundreds of thousands or millions of dollars in earnings, over [his] lifetime."  (*Id.*, ¶ 12.)

[99]Pl.'s Reply at 6-7.

1   Defendants counter that Kisaka has adduced insufficient evidence of irreparable harm.[100]

2   In *Winter*, the Supreme Court held that plaintiffs seeking preliminary injunctions must

3   "demonstrate that irreparable injury is *likely* in the absence of an injunction." 555 U.S. at 22.

4   It stated that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm

5   is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may

6   only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* In addition,

7   the threatened injury must be immediate in character, given that a preliminary injunction is an

8   extraordinary remedy. See *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674

9   (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to

10  establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to

11  preliminary injunctive relief" (emphasis added)). "The smaller the probability of a plaintiff's

12  success, the greater must be the showing of irreparable harm." *Preminger v. Principi*, 422 F.3d

13  815, 826 (9th Cir. 2005).

14  Kisaka has failed to proffer evidence that USC personnel have been systematically and

15  intentionally patrolling him or that he is in fact going to lose an "indefinite" amount of time in

16  attempting to complete his education, or that he will suffer financial losses if he not readmitted to

17  USC. Kisaka's fears and apprehensions are insufficient to support a finding of irreparable injury.

18  See *Christopher v. Gomez*, 26 F.3d 129, 1994 WL 209803, *2 (9th Cir. May 25, 1994) (Unpub.

19  Disp.) ("Christopher's desire to be single-celled stems from his belief that the defendant[s] are

20  housing him with informants who read his legal papers.  Christopher's belief that prison officials

21  are using inmates to 'spy' on his various legal activities is speculative and cannot support a finding

22  _____

23  [100]Defs.' Opp. at 2.  Defendants also argue that the only irreparable harm plaintiff claims
    is monetary, and thus not irreparable.  (*Id.*, at 5.)  See *American Trucking*, 559 F.3d at 1057.

24  While this accurately characterizes plaintiff's moving papers, in his reply, plaintiff asserts that he
    is being irreparably harmed because he is "forfeiting" his life due to the campus police's

25  "previous pattern of misconduct."  Pl.'s Reply, at 6.  As noted, Kisaka has not adduced any
    concrete evidence that such "harm" is irreparable, or even occurring.

26
    Defendants contend that Kisaka's complaint is not verified, and that he has not "filed ***any***

27  declaration to support any allegation of fact within the [m]otion." (Defs.' Opp. at 2.)  As noted,

28  Kisaka filed an affidavit with his reply.

of irreparable harm.  Moreover, although Christopher alleges that he is being housed with mentally unstable inmates and homosexuals, he has not presented any evidence that these inmates have threatened him or caused him any harm.  Christopher's subjective apprehensions and predictions cannot satisfy his burden of demonstrating an immediate threat of irreparable harm" (citation omitted)); see also *Goldie's Bookstore v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984) ("Speculative injury does not constitute irreparable injury"); see also *Caribbean Marine Services Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (same).

As defendants also note, the conduct Kisaka about which complains has allegedly been ongoing since 2008.  He did not file this application for preliminary injunctive relief until the spring of 2010, however.  This delay in his filing undercuts the notion that any threatened injury is immediate.  See *Miller ex rel N.L.R.B. v. California Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 2001) (noting that a "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm" (citation and internal quotations omitted)); *Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("'[T]he basic function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.' . . .  Where no new harm is imminent, and where no compelling reason is apparent, the district court was not required to issue a preliminary injunction against a practice which has continued unchallenged for several years"); *Protech Diamond Tools, Incorporation v. Liao*, No. C 08-3684 SBA, 2009 WL 1626587, *6 (N.D. Cal. June 8, 2009) ("Plaintiff"s undue delay in filing its preliminary injunction motion rebuts its assertion of irreparable injury").

Because Kisaka's showing of irreparable harm is speculative, and because his delay in seeking an injunction undercuts his claim that he faces imminent harm, he has failed adequately to demonstrate that an injunction is necessary to prevent irreparable harm.[101]

---

[101]Defendants argue that plaintiff seeks both prohibitory and mandatory relief that is far "beyond what is required to maintain the status quo pendente lite."  (Defs.' Opp. at 3.) Defendants cite *Martin v. International Olympic Committee*, 740 F.2d 670 (9th Cir. 1984), which stated that "[i]n cases . . . in which a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction."  *Id.* at 675.  Defendants also observe that the requested injunction is

### D. The Balance of the Equities and the Public Interest

The other two elements that must be considered in deciding whether to issue a preliminary injunction are the balance of equities and whether an injunction would serve the public interest. *Winter,* 555 U.S. at 20.

Kisaka contends that the "threatened injury" he faces outweighs the harm defendants might suffer if a preliminary injunction issues.[102] He asserts that defendants' conduct has irreparably damaged his education and career, and that there "has not been and there will not be any conceivable hardship or harm to the university."[103] In each case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production*, 480 U.S. at 542. As discussed, Kisaka fails to establish that he will succeed on the merits of any of his claims or that he would suffer any injury if the injunction were not granted. The court therefore need not balance the equities at issue. See *Jones*, 2010 WL 582131 at *2 ("As plaintiff has failed to show that he is likely to succeed on the merits of his claims, he is not entitled to a TRO or preliminary injunction and the court need not consider whether he has made the requisite showings of irreparable harm, favorable balance of the equities, or public interest").

Kisaka argues that "granting the requested preliminary injunction relief would not disserve the public interest" since the "public interest weighs in favor of [him] completing [his] education as soon as possible, for which [he] ha[s] paid a fortune so [he] can be a resourceful hardworking citizen contributing to the public good."[104] The district court must analyze the public interest if an injunction impacts non-parties. *Stormans*, 586 F.3d at 1138-39. "When the reach of an

---

"overboard and unconstitutionally vague and ambiguous." (Defs.' Opp. at 3.) Because the court has found that plaintiff has not demonstrated entitlement to a preliminary injunction, it declines to address defendants' remaining arguments.

[102]Pl.'s Motion at 10.

[103]*Id.*

[104]*Id.* at 11.

injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be 'at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction.'" *Id.* at 1138–39 (quoting *Bernhardt v. L.A. County*, 339 F.3d 920, 931 (9th Cir. 2003)); *Sammartano v. First Judicial District Court, in and for County of Carson City*, 303 F.3d 959, 974 (9th Cir. 2002) ("The public interest inquiry primarily addresses impact on non-parties rather than parties"). "The plaintiffs bear the initial burden of showing that [issuance of an] injunction is in the public interest." *Stormans*, 586 F.3d at 1139 (citing *Winter*, 129 S.Ct. at 378).

Kisaka contends that "[t]he public interest is always furthered where [ ]constitutional civil and statutory rights are safeguarded."[105] See *Preminger*, 422 F.3d at 826 ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution"). Kisaka's failure to demonstrate a likelihood of success on the merits of his constitutional claims, however, undercuts his claim that the public interest will be served if an injunction issues. *Id.* (noting that plaintiff's failure to show a likelihood of success on the merits weighed against a finding that the public interest would be served). In addition, the injunction sought by Kisaka will not affect anyone other than him, the university and its personnel. Kisaka seeks to void the stay-away order, be reinstated him as an "active" student, obtain assistance in completing his Master's Degree, and more.[106] Despite his allegations that his constitutional rights have been violated, the fact that the relief he seeks is personal to him weighs against a finding that an injunction would serve the public. Consequently, this element is neutral.

### III. CONCLUSION

Kisaka has failed to meet his burden on any of the four prongs of the preliminary injunction test. Most importantly, he has utterly failed to demonstrate that he is likely to succeed on the

---

[105]Pl.'s Affidavit at 11.

[106]Pl.'s Motion at 2-3.

1   merits of his claims or that he will suffer irreparable harm if the injunction does not issue. The

2   other factors in the analysis are neutral.   A weighing of all the relevant factors compels the

3   conclusion that Kisaka is not entitled to preliminary injunctive relief.   Consequently, plaintiff's

4   motion for a preliminary injunction is denied.

5

6   DATED: August 3, 2012

7                                                MARGARET M. MORROW
                                                 UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28